[No. 25802-8-I.  Division One.  August 5, 1991.]

DONALD W. CARSON, ET AL, *Appellants,* v. NORTHSTAR DEVELOPMENT COMPANY, ET AL, *Respondents.*

*Douglass A. North* and *Maltman, Weber, Reed, North & Ahrens,* for appellants.

*Andrew K. Saller, Jr.,* and *Vandeberg & Johnson,* for respondents.

[As amended by order of the Court of Appeals September 23, 1991.]

PEKELIS, J. — Donald and Kay Carson appeal an order vacating a default judgment entered against Northstar Development Company and J. Michael and Shelley McDonald. The judgment had been entered after McDonald failed to respond to service by publication. The Carsons contend the trial court erred in vacating the judgment without first conducting a hearing to resolve disputed factual issues raised in the parties' affidavits. We reverse and remand.

I

According to the affidavit of Don Carson, in 1978, he and Michael McDonald formed Northstar Development Company for the purpose of developing real estate and building speculation houses. McDonald and Carson were the sole officers, directors and shareholders of Northstar.

Northstar was not a successful business venture. On October 15, 1979, Carson resigned from the corporation. The company redeemed Carson's stock and Northstar and

McDonald executed an employment and noncompetition agreement obligating them to pay Carson $45,000 due no later than January 10, 1981.

From 1979 to 1983, Carson regularly spoke with McDonald concerning payment of the obligation. Throughout this period, McDonald told Carson that neither he nor Northstar had any means of satisfying the debt. In fact, McDonald repeatedly indicated that Northstar had no assets, cash flow, or profits.

In August 1983, Carson attempted to telephone McDonald at his Seattle office. He was informed, however, that McDonald was no longer located at that office and had left for Southern California. The person answering the phone did not know where McDonald could be reached.

In 1985, Carson obtained the telephone number of the Dennis Devine Development Company (Devine Company) in Pacoima, California, where McDonald worked. From July to October 1985, Carson telephoned McDonald several times at the Devine Company. On each occasion, the receptionist confirmed that McDonald worked for the Devine Company but stated that he was out of the office.

In May 1986, Carson again telephoned the Devine Company, this time reaching McDonald. However, when Carson identified himself, McDonald hung up. Subsequently, Kay Carson contacted directory assistance in an effort to locate McDonald's home address. After searching the listings for the area in and around Pacoima, the operator failed to locate McDonald's name.

On August 19, 1986, the Carsons filed a breach of contract action against McDonald in King County Superior Court. On August 27, 1986, a California service of process company attempted unsuccessfully to serve McDonald at the Devine Company. The office manager advised the process server that McDonald had left the company in March 1986 to return to the Kent, Des Moines or Tacoma area. The Carsons searched the Kent, Des Moines and

Tacoma telephone directories and also contacted directory assistance but were unable to find McDonald.

On October 24, 1986, Carson telephoned the Devine Company, claiming to be a friend of McDonald's named "Chuck Short". When McDonald answered the telephone, Carson hung up. Thereafter, on November 4 and December 30, 1986, and January 2, 1987, the Carsons again attempted to serve McDonald at the Devine Company. On the latter two occasions, the Carsons used a different process service company and offered a $100 bonus to anyone who successfully served McDonald. Each time, however, the process server was advised that McDonald had left the company and returned to Washington. On the last occasion, the office manager indicated that McDonald may be in Seattle.

On January 7, Carson telephoned the Devine Company, this time identifying himself as Bill Crium. The receptionist told Carson that McDonald was in the office but was busy on another call. After remaining on hold for 15 minutes, Carson hung up.

On January 8, 1987, the Carsons sought service by publication under RCW 4.28.100.[1] The affidavit in support of publication alleged that the McDonalds[2] left Washington with the intent of defrauding the Carsons or avoiding

---

[1] RCW 4.28.100 states in part:

"When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons . . . and complaint in the post office, directed to the defendant at his place of residence, . . . and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his attorney in any of the following cases:

" . . . .

"(2) When the defendant, being a resident of this state, has departed therefrom with intent to defraud his creditors, or to avoid service of a summons, or keeps himself concealed therein with like intent;

"(3) When the defendant is not a resident of the state, but has property therein and the court has jurisdiction of the subject of the action[.]"

[2] Michael and Shelley McDonald were divorced in March 1981.

service of process. The summons was published in a Seattle newspaper and, when the McDonalds failed to appear, a default judgment in the amount of $45,000 plus interest, costs and statutory attorneys' fees was entered against them.

On December 11, 1989, McDonald filed a motion to vacate the default judgment pursuant to CR 60(b)(5), claiming that the judgment was void for lack of valid service of process. McDonald's principal contention was that the Carsons failed to exercise due diligence in attempting to find him before resorting to service by publication. He asserted that had the Carsons checked the annual reports of Northstar Development filed with the Secretary of State or the records of the Pierce County Assessor's office, they would have discovered McDonald's home address in Thousand Oaks, California.

In his affidavit, McDonald disputed the Carsons' contention that he was working at the Devine Company in 1986 when service of process was attempted. He attached pay stubs from the Deseret Pacific Mortgage Company and submitted the affidavits of Michael Hooper, executive vice-president of Devine, and Chris Davey, vice-president of Deseret. The affidavits and pay stubs indicated that McDonald left the Devine Company in February 1986 and was employed by Deseret from April 1986 to July 1987.

On January 12, 1990, the motion to vacate the default judgment was granted. In doing so, the trial court rejected the Carsons' request for an evidentiary hearing to resolve whether McDonald was working at the Devine Company at the time service was attempted. Reconsideration was denied.

## II

On appeal the Carsons assign error to the trial court's failure to hold an evidentiary hearing. They assert that the question whether McDonald was present at the Devine Company in 1986 bears directly upon the reasonableness of their efforts to locate him. McDonald con-

tends, on the other hand, that because the Carsons' failure to check with the Secretary of State or Pierce County Assessor supports the trial court's decision, the issues of fact raised in the parties' affidavits need not be considered. Alternatively, McDonald claims that the published notice did not comply with due process, since he was in California, and publication occurred in Washington.

■ We recognize that default judgments are generally disfavored and a trial court should "exercise its authority 'liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done.'" *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979) (quoting *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1969)). A trial court's disposition of a motion to vacate is reviewed under an abuse of discretion standard; an abuse of discretion is less likely to be found when a default judgment is set aside. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d at 582; *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991).

■ Nevertheless, in this case we are constrained to conclude that the trial court abused its discretion in vacating the judgment.[3] Without resolution of the disputed facts, the trial court simply was not able to conclude that the Carsons' efforts to locate McDonald were insufficient to establish due diligence under RCW 4.28-.100. To comply with this statute, a plaintiff must make an honest and reasonable effort to find the defendant before service by publication is authorized. *Schmelling v. Hoffman*, 111 Wash. 408, 414, 191 P. 618 (1920); *Longview*

---

[3]We also question whether a highly deferential standard makes sense here. When the trial court vacated the judgment in January 1990, the Carsons were compelled to file suit again. Counsel advised the court at oral argument that McDonald has raised the 6-year statute of limitations as a defense. *See* RCW 4.16.040. Potentially, the Carsons may lose the right to bring their cause of action entirely. In this case then, vacation of the default judgment may not mean the salubrious remedy of a trial on the merits. Thus, the usual justification for the appellate court to be solicitous of the trial court's decision on the motion to vacate is absent here.

*Fibre Co. v. Stokes*, 52 Wn. App. 241, 244, 758 P.2d 1006 (1988).

Here, if Carson's version of his contacts with McDonald at the Devine Company is false, the trial court would be able to find an absence of due diligence. On the other hand, if Carson is telling the truth and McDonald was at the Devine Company, the court would be justified in concluding that Carson's efforts to serve him there were reasonable and honest. Thus, by declining to hear testimony regarding the timing of McDonald's departure from the Devine Company, the court erred in vacating the judgment.

In so holding, we reject McDonald's claim that the Carsons' efforts, in any event, were per se less than honest and reasonable because they failed to check Northstar's corporate filings with the Secretary of State or McDonald's property holdings listed in the Pierce County Assessor's office. Washington courts have long stated that a plaintiff need not exhaust *all* conceivable means of personal service before service by publication is authorized. *Schmelling*, 111 Wash. at 414; *Longview Fibre Co.*, 52 Wn. App. at 245; *accord, Martin v. Meier*, 111 Wn.2d 471, 481-82, 760 P.2d 925 (1988) (discussing "due diligence" in the context of RCW 46.64.040). A plaintiff need only follow up on that information possessed by the plaintiff which might reasonably assist in determining a defendant's whereabouts. *Martin*, 111 Wn.2d at 481-82.

Here, the course of dealings between the parties gave the Carsons no reason to believe that Northstar was an active corporation with current filings. In fact, McDonald had repeatedly indicated that Northstar was essentially insolvent. Moreover, there is nothing in the record to indicate the Carsons knew that McDonald had any recorded interest in property in Pierce County.

In sum, we hold that the trial court abused its discretion in granting McDonald's motion to vacate the default judgment without first conducting an evidentiary hearing to determine whether McDonald was working for the

Devine Company at the time service was attempted. The parties' affidavits raise an issue of material fact which had to be resolved before the trial court could decide whether Carson executed due diligence under RCW 4.28.100.

## III

We turn next to McDonald's alternative contention that his due process right to notice was violated since he was in California and publication occurred in a Washington newspaper.

■ "The purpose of statutes which prescribe the methods of service of process is to provide due process." *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Until notice, actual or constructive, is given to a defendant, the court has no jurisdiction to proceed to judgment. *Ware v. Phillips*, 77 Wn.2d 879, 882, 468 P.2d 444 (1970).

The instant case was filed in King County. Consequently, the Carsons published notice of the impending action in a King County newspaper as prescribed by RCW 4.28.110.[4] Not only does such notice comply with the statute, it also complies with due process. Although Carson had reason to believe that McDonald resided in California throughout all of March 1986, it is undisputed that Devine Company personnel informed the process servers that McDonald had returned to Washington and may be in Seattle. Thus, if there was any area in which publication was reasonably calculated to provide actual notice to McDonald, it was King County.

---

[4] RCW 4.28.110 provides in part:
"The publication shall be made in a newspaper of general circulation in the county where the action is brought once a week for six consecutive weeks".

Accordingly, we conclude that the manner of publication used here was reasonably calculated to apprise McDonald of the pending action or afford him an opportunity to be heard.

Reversed and remanded.

WEBSTER, A.C.J., and KENNEDY, J., concur.

After modification, further reconsideration denied September 23, 1991.