**Barbara BICKEL (f/k/a Barbara Jackson), Plaintiff and Appellee,**

v.

**David JACKSON, Defendant and Appellant.**

**Civ. No. 940301.**

Supreme Court of North Dakota.

March 16, 1995.

Scott T. Solem, Beulah, for plaintiff and appellee.

David R. Jackson, pro se, Apple Valley, CA.

SANDSTROM, Justice.

David Jackson appeals from an order amending a divorce judgment to hold him liable to Barbara Bickel, his former spouse, for child support arrearages and to increase his monthly child support obligation. Because Bickel failed to comply with the procedure for service by publication, the trial court did not acquire personal jurisdiction over Jackson and the order is void. We therefore vacate the order.

I

Jackson and Bickel were divorced in 1982. Bickel was awarded custody of their two children and Jackson was ordered to pay child support.

In June 1993, Bickel moved to, among other things, obtain a judgment against Jackson for child support arrearages and to review his monthly child support obligation. Notice of the motion and the pleadings were mailed by certified mail, return receipt requested, to Jackson at a Lucerne Valley, California address. This mailing was returned and marked "returned to sender," "no such address." Bickel then sent the documents by certified mail to Jackson at an Apple Valley, California address. The original envelope and return receipt were not filed with the trial court. In July 1993, the trial court denied Bickel's motion because of insufficient service of process.

In October 1993, Bickel attempted to secure personal service on Jackson at another Apple Valley address through the San Bernardino County Marshall's Office in Victorville, California. The marshall's office was unable to serve Jackson because he had moved. In January 1994, the Mercer County Sheriff's Office was also unsuccessful in locating Jackson in North Dakota.

In May 1994, Bickel renewed her motion. Bickel's attorney filed an "affidavit for publication" stating personal service could not be made on Jackson in either North Dakota or California. The notice of motion was published in the Beulah Beacon for three consecutive weeks beginning May 26, 1994, and again for three consecutive weeks beginning June 23, 1994.

In August 1994, the trial court granted Bickel's motion. This Court has subject matter jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 28–27–01. Jackson's appeal from the order is timely under N.D.R.App.P. 4(a).

## II

A court must have personal jurisdiction over a nonresident spouse to validly adjudicate child support. *Smith v. Smith,* 459 N.W.2d 785, 789 (N.D.1990); *Byzewski v. Byzewski,* 429 N.W.2d 394, 397 (N.D.1988). It is well settled in this state when service of process is obtained by publication, there must be strict compliance with the provisions allowing for such service. *E.g., Bartell v. Morken,* 65 N.W.2d 270, 273 (N.D.1954), and cases cited therein. Service by publication is permitted by N.D.R.Civ.P. 4(e), which provides in part:

"(e) *Service by publication.*

\* \* \* \* \* \*

"(4) *Mailing summons and complaint.* A copy of the summons and complaint, at any time after the filing of the affidavit for publication and not later than ten days after the first publication of the summons, must be deposited in some post office in this state, postage prepaid, and directed to the defendant to be served at the defendant's last reasonably ascertainable post office address."

Bickel concedes a copy of the summons and complaint was not mailed to Jackson's "last reasonably ascertainable post office address" within 10 days after the first publication. But she asserts this requirement is "absurd as it imposes an impossibility and succeeds at nothing" because "requiring a party to attempt to personally serve process upon an individual at an address previously determined to be unknown would be a completely idle and unfruitful act, ..." We reject this argument for several reasons.

First, Bickel misreads *Bartell* for the proposition a party is not required to strictly comply with service by publication requirements which are "completely idle and unfruitful." In *Bartell* at 276, the Court held N.D.R.C.1943 § 32–1707, the statute govern-

ing service by publication on unknown defendants, did not require the sheriff to make a return stating after reasonable diligent inquiry he was unable to personally serve unknown defendants. The affidavit at issue in that case met the requirements of § 32–1707. *Bartell* does not support the argument some provisions governing service by publication may be ignored.

Second, Rule 4(e)(4) was amended effective January 1, 1977, to require the mailing of the summons and complaint to the "defendant's last reasonably ascertainable post-office address." N.D.R.Civ.P. 4, Explanatory Note. Before the amendment, a plaintiff was allowed to dispense with the mailing if "the affidavit for publication states that the residence of the defendant is unknown." Minutes of Meeting, Joint Committee of the Judicial Council and the State Bar Association, Special Procedure Committee, April 8–9, 1976, at p. 8–a. Although rules of court are not legislative enactments, we construe them consistent with principles of statutory construction. *Walker v. Schneider,* 477 N.W.2d 167, 172 (N.D.1991). There is a presumption the legislature acts with purpose and does not perform idle acts. *State Bank of Towner v. Edwards,* 484 N.W.2d 281, 282 (N.D.1992). Adopting Bickel's construction of Rule 4(e)(4) would render the 1977 amendment an idle act.

Third, Bickel incorrectly equates the Rule 4(e)(4) mailing requirement to an attempt at "personal service." Rule 4(e) clearly differentiates between "personal service" and "service by publication." Resort to service by publication is authorized only when personal service cannot be made. N.D.R.Civ.P. 4(e)(2)(A). Personal service by mail requires "any form of mail addressed to the person to be served and requiring a signed receipt and resulting in delivery to that person." N.D.R.Civ.P. 4(d)(3)(C). Unlike the personal service requirement of a mailing "addressed to the person to be served and requiring a signed receipt," the Rule 4(e)(4) mailing must be sent by regular mail by being "deposited in some post office in this state, postage prepaid, and directed to the defendant to be served at the defendant's last reasonably ascertainable post office ad-

dress." This Court, interpreting the predecessor statute to Rule 4(e)(4), long ago ruled "[t]he mailing of summons and complaint within 10 days from the date of the first publication of the summons *is not a personal service thereof,* and is but a part of the statutory service of summons by publication; ..." *Murphy v. Missouri & K. Land & Loan Co.,* 22 N.D. 336, 133 N.W. 913 Syllabus (1911) (emphasis added).

Finally, Bickel wrongly argues the Rule 4(e)(4) mailing is an "unfruitful act" which "succeeds at nothing." The North Carolina Supreme Court has dealt with a similar service by publication mailing requirement. In *Harrison v. Hanvey,* 265 N.C. 243, 143 S.E.2d 593 (1965), the plaintiff was unable to accomplish personal service on the defendant at several different addresses and then sought to invoke the service by publication statutes, one of which required the clerk of court to mail a copy of the notice to the defendant at the best address the plaintiff could furnish. The court held failure of a defendant to receive a copy of the notice would not invalidate service of process by publication, but failure of the clerk to mail the notice would invalidate the service.

> "This requirement that the clerk of the superior court mail a notice to the party being served by publication at the best address the applicant can furnish—usually the last known address—is no formal gesture of deference to due process. As every practicing attorney and law-enforcement officer knows, there are among certain classes those persons who would feel an obligation to forward or deliver a letter to one being sought, but who would feel obliged to give a lawyer or a deputy sheriff no information whatever as to the whereabouts of the one sought."

*Harrison,* 143 S.E.2d at 602. *See also Snead v. Foxx,* 329 N.C. 669, 406 S.E.2d 829, 832–833 (1991).

We agree with the North Carolina Supreme Court's rationale for the service by publication mailing requirement. By requiring the mailing of copies of the summons and complaint to an address from which they might reasonably be forwarded to a defendant, this procedure simply attempts to provide the defendant actual notice of the proceedings where personal service has failed. Although the mailing may not succeed in providing actual notice, the mailing certainly furthers the due process requirement of providing "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

We conclude Bickel's failure to comply with the Rule 4(e)(4) mailing requirement renders the attempted service by publication void. *See Lauinger v. Fleischer–Schmid Corporation,* 151 F.Supp. 376, 378 (D.N.D. 1957) (construing North Dakota law). Because the trial court did not obtain personal jurisdiction over Jackson, the trial court's order amending the divorce judgment is also void. *See Smith v. City of Grand Forks,* 478 N.W.2d 370, 371 (N.D.1991).

### III

We have considered the other arguments raised by Jackson and, based on the record before us, we deem them to be without merit.[1] Because there was defective service by publication in this case, we vacate the order amending the divorce judgment.

VANDE WALLE, C.J., and LEVINE and NEUMANN, JJ., concur.

MESCHKE, Justice, concurring and dissenting.

I agree that Bickel's failure to complete the NDRCivP (4)(e)(4) mailing requirement probably made the attempted notice of the motion by publication ineffectual. I believe, however, that the proper remedy was to move the trial court for relief, not to appeal. Because I believe our decision on the merits

---

1. The dissent ignores the fact that the trial court did not issue its order as ex parte, but as one where notice was properly given.

The dissent further ignores that Rule 4(e)(7) relates to cases where "service by publication is made" on the defendant. Here no service by publication was made.

could be misunderstood, I would prefer to dismiss the appeal and remand for the trial court to decide what should be done.

This was a non-appealable ex parte order. *See* NDCC 28–27–02(7): "An order made . . . without notice is not appealable, . . . [until] after a hearing is had upon notice which vacates or refuses to set aside an order previously made without notice. . . ." *See also Matter of Estate of Kjorvestad,* 395 N.W.2d 162, 163 (N.D.1986) (NDCC 28–27–02(7) "precludes appeal of an order entered without notice or hearing 'until such time as the judge who made the order has a chance to reconsider his decision in an adversary proceeding.' "). (Citation omitted). While appealability was not questioned by Bickel, we consider it on our own because it is jurisdictional. *City of Fargo v. Casper,* 512 N.W.2d 668, 669 (N.D.1994). Since the order amending the judgment can be reconsidered on remand, I believe the preferable procedure would be to let the trial court do it. Moreover, dismissal and remand should have a beneficial effect of discouraging like appeals when the trial court has not acted on the question.

In this case, it is clear the trial court had personal jurisdiction over Jackson for the divorce decree in 1982, when Jackson was ordered to pay Bickel $200 per child, totalling $400 child support monthly. The trial court has continuing jurisdiction to "modify the same at any time." NDCC 14–05–22(1). *See also* NDCC 14–09–08.1; *Larson v. Dunn,* 474 N.W.2d 34 (N.D.1991). Until properly modified, a decree for periodic child support continues and cannot be retroactively changed. *Throndset v. L.L.S.,* 485 N.W.2d 775, 780 (N.D.1992) ("[P]ast-due and unpaid child support payments are not subject to retroactive modification."). Thus, Jackson's unpaid support obligation has continued to accrue, despite Bickel's ineffectual motion.

Bickel sought to increase Jackson's monthly child support as she is entitled to do. *See* NDCC 14–09–08.4 through 14–09–08.10 on periodic review of child support orders. Of course, Jackson needed an opportunity for a hearing on any prospective change in his child support obligation. *See McWethy v. McWethy,* 366 N.W.2d 796, 799 (N.D.1985)

("proceedings on continuing jurisdiction should follow procedures prescribed by the Rules of Civil Procedure for notice and hearing"). Jackson could have obtained a hearing from the trial court without this appeal.

On notice by publication, when a party has "had no actual notice or knowledge of the pendency of the [motion] so as to enable the [party] to make application to defend before the entry of judgment therein," the rules of procedure allow that party to be heard "at any time within three years after entry of judgment on such terms as may be just" if the party shows "to the satisfaction of the court by affidavit, stating the facts, that the [party] has a good and meritorious defense to the action" and proves the lack of actual notice. NDRCivP (4)(e)(7). Here, Jackson apparently acquired actual knowledge of this amended judgment soon after it was entered, since he timely appealed it. Rather than moving for an opportunity to be heard in the trial court, Jackson chose to appeal instead. Since an ex parte judgment is not appealable, I believe we shouldn't dignify this one by deciding it on the merits.

Also, it is possible the judgment for arrearages should be handled differently. Bickel sought a formal judgment for accumulated support arrearages of $22,731.42. Why is not entirely clear. It may have been for the reason that the original support decree preceded enactment of NDCC 14–08.1–05(1)(a): "Any order directing any payment or installment of money for the support of a child is, on and after the date it is due and unpaid . . . [a] judgment by operation of law, with the full force, effect, and attributes of a judgment of the district court, including the ability to be entered in the judgment book pursuant to rule 58 of the North Dakota Rules of Civil Procedure and otherwise enforced as a judgment." *See* 1987 N.D.Laws ch. 181, § 1. But I believe the entire arrearage here accumulated since this enactment, which may allow entry of a formal judgment without further notice. Since that subject has not been briefed on this appeal, the trial court should consider it before we void the formal judgment for arrearages.

On the judgment for arrearages, too, Jackson's failure to receive notice largely resulted

from his own indifference to his duty to support his children. *See* NDCC 14–09–08.1(2):

> The parties subject to the [child support] order shall immediately inform the clerk ... of any change of address or change of any other condition which may affect the proper administration of this chapter [on child support payments].

Bickel repeatedly tried to notify Jackson of her motion, but Jackson evidently changed his address several times without notifying the clerk of court about a new one. I would not immediately reward Jackson by wholly voiding the docketed money judgment, as the majority opinion appears to do, because the lack of notice to him was largely Jackson's own fault.

While I agree Jackson would be entitled to an opportunity to be heard, I believe that he could have obtained that hearing from the trial court as our rules of civil and appellate procedure expect. This court is not a trial court. Unless Jackson can show patent error in the trial court's records of support payments and remittances, it is questionable whether he could show good cause to set aside the money judgment. On the other hand, he needs an opportunity to show what his periodic child support payment should be prospectively under current guidelines before it is increased. For that matter, he would need that opportunity before his support obligation is decreased, since Jackson now claims his business failed recently and he is financially strapped to pay support.

I believe that the trial court is more capable of addressing the entire situation than this court. A remand will enable the trial court to act on all related child support matters at the same time. For these reasons, I believe that our disposition should be a dismissal of this appeal with remand to the trial court for Jackson's opportunity to be heard on the merits.