Lynne McCOMB, Plaintiff and Appellee,

v.

Hossam ABOELESSAD, a/k/a Hossam Assad, Defendant and Appellant.

Civ. No. 950007.

Supreme Court of North Dakota.

Aug. 7, 1995.

Mark R. Fraase (argued), Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for plaintiff and appellee.

Susan Ellison (argued), Hannig Law Office, P.A., Moorhead, for defendant and appellant.

MESCHKE, Justice.

Hossam Aboelessad, also known as Hossam Assad (Assad), appeals from an order denying his NDRCivP 60(b) motion to set aside a judgment obtained by default after service by publication and mailing. The judgment annulled his marriage to Lynne McComb and granted McComb custody of their child. We affirm.

In February 1985, McComb met Assad, an Egyptian citizen who was working at the Cairo airport, while she was traveling through Egypt before beginning her residency in obstetrics and gynecology in this country. Assad corresponded with McComb, and later came to the United States on a six-month tourist visa. He visited McComb in Buffalo, New York on August 1, 1985, and "beg[ged]" her to marry him. Although McComb wanted to wait, Assad wanted to get married as soon as possible because he could not work in the United States without a "green card." McComb and Assad married on September 14, 1985, and had a daughter, Nora, on October 12, 1987.

According to McComb, in early 1990, she learned Assad had married her solely to avoid deportation. McComb left the couple's home in Maryland with Nora and moved to North Dakota to be close to her family. McComb got a job at Fargo Clinic MeritCare and bought a home in Fargo. On May 15, 1990, McComb sued Assad for divorce in North Dakota and obtained an interim order granting her temporary custody of Nora, with reasonable visitation for Assad, and prohibiting Assad from removing Nora from the United States.

On October 12, 1990, the day after Assad arrived in Fargo for visitation with Nora, Assad took Nora and fled to Egypt. Assad was charged by a criminal complaint under NDCC 14-14-22.1 with removing a child from the state in violation of a custody decree. State and federal warrants were issued for Assad's arrest.

McComb went to Egypt on October 21, 1990, to look for Nora. McComb found Nora and Assad, but Assad would not allow McComb to see Nora unless the criminal complaint and arrest warrants were withdrawn, Nora's passport mailed to him, and the pending divorce action dismissed. McComb met these conditions and dismissed the divorce action on November 5, 1990. Assad then allowed McComb to visit Nora, but he refused to let Nora return with McComb to the United States. McComb returned to work at Fargo and sought diplomatic assistance to have Nora returned to the United States.

Assad got a job as an architect in the United Arab Emirates (UAE) and moved there with Nora. In September 1991, McComb took a leave of absence from her employment, went to the UAE, and lived with Assad. According to McComb, after

her arrival, when Assad left their home, he would lock McComb and Nora in the apartment. McComb could not leave the UAE because Assad had her and Nora's passports. According to McComb, Assad forced her to have sexual relations with him and threatened her about attempting to interfere with his custody of Nora.

On October 30, 1991, by long distance telephone, McComb had the criminal complaint against Assad and the state and federal warrants reinstated. Also, she had a new summons and complaint for divorce filed and obtained an ex parte order for temporary custody of Nora from the North Dakota court. She did not serve these divorce papers on Assad.

During all her time in the UAE, McComb and her father sought a way to return Nora to North Dakota. In early August 1993, McComb let her father know that Assad would be taking them to Moscow, Russia. On August 12, 1993, McComb's father, with the assistance of Moscow police, got McComb and Nora separated from Assad and put them on a flight from Russia to the United States.

On August 17, 1993, McComb filed an amended complaint seeking annulment of the marriage. The next day, Assad's local attorney asked, and was granted, permission to withdraw from representing Assad. Assad's attorney served the motion for leave to withdraw on Assad's "last known address": "Al Ghurir Center, P.O. Box 6999, Dubai, United Arab Emirates."

On August 18, 1993, McComb also filed a sheriff's return certifying Assad could not be found in Cass County. On August 19, 1993, McComb's attorney filed an amended affidavit for service by publication stating "after diligent inquiry affiant does not know the whereabouts of [Assad] and to his best knowledge, information and belief, personal service cannot be made on [Assad] within ... North Dakota." On August 20, 1993, her attorney sent a copy of the amended summons and complaint by ordinary mail to Assad at the same Dubai address Assad's attorney mailed the motion to withdraw. Her attorney published for three consecutive weeks the amended summons in a Fargo daily newspaper in the county where the annulment action was pending. McComb's attorney made no attempt to personally serve Assad outside Cass County, either by mail with return receipt or under the laws of the UAE.

McComb and Nora went into hiding through a private witness protection program because of the threats Assad had made to McComb while they were living in the UAE. McComb participated telephonically in the default hearing on the annulment action in the trial court on October 26, 1993. The trial court ruled Assad had been properly served by publication at the Dubai address. The court also found McComb's consent to the marriage had been obtained by fraud, that McComb had not freely cohabitated with Assad upon learning of the fraud, and that she was entitled to annul the marriage. In the annulment, the court granted McComb custody of Nora.

Nearly a year later in October 1994, Assad appeared in court telephonically from Dubai and pled guilty to criminally violating NDCC 14–14–22.1 by removing Nora from the state. He was sentenced to one year of imprisonment, suspended for five years, and placed on supervised probation for five years.

On October 27, 1994, Assad moved under NDRCivP 60(b) to set aside the annulment. Assad asserted proper service of process had not been made and that McComb obtained the annulment by fraud. At the hearing on his motion, the trial court, adhering to a local practice rule, would not allow Assad to testify telephonically, but did accept his affidavit dated the same date as the hearing. The court ruled there was proper service by publication and McComb "had been a resident in good faith" of North Dakota for at least six months at the time of service by publication. The court denied Assad's motion for relief from the judgment and ordered Assad to pay $300 for McComb's attorney fees. Assad appealed.

Assad asserts the trial court lacked personal jurisdiction over him because McComb failed to personally serve him with the amended summons and complaint. We disagree.

One who moves for Rule 60(b) relief has the burden of establishing sufficient grounds for disturbing the finality of the judgment. *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794 (N.D.1986). The trial court must exercise sound discretion in deciding whether the movant's reasons are sufficient to set aside the judgment, and we will not disturb its decision on appeal absent an abuse of that discretion. *Bjorgen v. Kinsey*, 466 N.W.2d 553, 561 (N.D.1991). Valid service of process is necessary for personal jurisdiction over a defendant. *Smith v. City of Grand Forks*, 478 N.W.2d 370, 371 (N.D.1991). A judgment or order entered without personal or subject matter jurisdiction is void under NDRCivP 60(b)(iv). *Larson v. Dunn*, 474 N.W.2d 34, 39 (N.D.1991). These principles guide our analysis here.

Assad did not seek relief under NDRCivP 4(e)(7) that allows a defendant served by publication to reopen and defend in certain circumstances:

> Except in an action for divorce, the defendant upon whom service by publication is made, or the defendant's representative, upon making it appear to the satisfaction of the court by affidavit, stating the facts, that the defendant has a good and meritorious defense to the action, and that *the defendant had no actual notice or knowledge of the pendency of the action so as to enable the defendant to make application to defend before the entry of judgment therein*, and upon filing an affidavit of merits, may be allowed to defend at any time within three years after entry of judgment on such terms as may be just.... A defendant who receives a copy of the summons in the action mailed to the defendant as provided in paragraph (4), or upon whom the summons is personally served out of this state, as provided in paragraph (5), is deemed to have had notice of the pendency of the action and of the judgment therein entered.

(Emphasis added). Unlike Rule 4(e)(7), NDRCivP 60(b) does not exclude divorce actions from the scope of its relief. *See Bentley v. Bentley*, 533 N.W.2d 682 (N.D.1995). While we need not decide whether an annulment action is the same as a divorce action, Rule 60(b) expressly says it "does not limit the power of a court ... to grant relief to a defendant not actually personally notified as provided in Rule 4(e)(7), ..." *See Crawford v. Crawford*, 524 N.W.2d 833 (N.D.1994); *Hamilton v. Hamilton*, 410 N.W.2d 508 (N.D.1987). Under either Rule 4(e)(7) or Rule 60(b), therefore, a moving party, served by publication, can obtain relief by proving lack of actual knowledge of the pendency of the action, as well as by proving a jurisdictional defect in the service by publication.

Here, Assad does not claim that McComb failed to strictly comply with the provisions allowing for service by publication, or failed to make the NDRCivP 4(e)(4) mailing. *See Bickel v. Jackson*, 530 N.W.2d 318 (N.D.1995). Indeed, Assad did not deny that he received copies of the amended summons and complaint, or claim that he was not living at the address where the amended summons and complaint were mailed. The record does not show that the documents were returned to the office of McComb's attorney. In his affidavit, Assad vaguely claimed only that McComb "obtained an annulment of our marriage, without informing me."

A defendant challenging service of process must do so in more than conclusory terms. *Production Credit Ass'n v. Obrigewitch*, 443 N.W.2d 923, 924 (N.D.1989). A claim of insufficient process, unsupported by facts and documentation, is not enough to upset a judgment. *Farm Credit Bank of St. Paul v. Stedman*, 449 N.W.2d 562, 565 (N.D. 1989). Sufficiency of service is a fact question that will not be reversed on appeal unless clearly erroneous. *Dakota Bank & Trust v. Federal Land Bank*, 437 N.W.2d 841, 843 (N.D.1989). These principles control here.

Assad's vague assertion is insufficient to prove Assad did not have actual notice or knowledge of the pending action, and that the mailed summons and complaint were not received at his residence. Assad did not meet a specific condition for having the judgment declared void for lack of personal jurisdiction.

Moreover, under these circumstances, we reject Assad's argument that

McComb was required to do more to effect personal service. We recognize that "personal service is preferred" over service by publication. Explanatory Note to NDRCivP 4. Before service of a summons by publication is authorized, the plaintiff or the plaintiff's attorney must execute an affidavit stating "after diligent inquiry personal service of the summons cannot be made upon the defendant in this state...." NDRCivP 4(e)(2)(A). Still, a plaintiff need not exhaust all conceivable means of personal service before service by publication is authorized. *See Carson v. Northstar Development Co.,* 62 Wash.App. 310, 814 P.2d 217, 221 (1991). Rather, reasonable efforts under the circumstances are all that is required. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950); *United Nat'l Bank v. Searles,* 331 N.W.2d 288, 292 (S.D.1983). Here, McComb's attorney made reasonable efforts on her behalf.

The Cass County Sheriff made a search for Assad in North Dakota. *Compare Grenz v. O'Rourke,* 235 N.W.2d 881, 884 (N.D.1975) ("a search for a defendant in the state would be required before service upon him outside of the state, by publication, could be made"). Although Assad complains about the extent and length of that search, we understand that state and federal felony warrants were reissued for Assad's arrest in October 1991, and all efforts to locate him in the state had been unsuccessful since then. Assad offered no evidence that he could have been personally served in this state.

Contrary to Assad's suggestion that attempts at personal service by registered or certified mail should have been made, the record supports McComb's contention that she and her attorney were not certain where Assad was located to facilitate a restricted mail delivery. The action was brought five days after McComb and Nora successfully escaped from Assad in Moscow. Thus, his presence in the UAE was questionable. Furthermore, the circumstances surrounding the hasty withdrawal of Assad's prior attorney suggest that Assad was attempting to avoid notice of motions through his attorney. Here, service by publication, with the Rule

4(e)(4) mailing, was arguably the best available means of giving Assad actual notice of the proceedings. *See Bickel,* 530 N.W.2d at 321 (Rule 4(e)(4) mailing by ordinary mail facilitates forwarding to a defendant); *Levin v. Ruby Trading Corporation,* 248 F.Supp. 537, 541 (S.D.N.Y.1965) (where defendant makes no claim he did not receive service of process by ordinary mail, due process requirements are satisfied). *Cf. Borzeka v. Heckler,* 739 F.2d 444, 447 (9th Cir.1984) (failure to comply with personal service requirement does not require dismissal of complaint if party received actual notice and there is justifiable excuse for failure to serve properly); *Nichols v. Surgitool, Inc.,* 419 F.Supp. 58, 63 (W.D.N.Y.1976) (actual notice of action is a significant fact and given substantial weight in ascertaining whether service has comported with federal process rule). We conclude that McComb acted with reasonable diligence, under these circumstances, in resorting to service by publication.

Assad also asserts the trial court had no subject matter jurisdiction over the annulment action because McComb did not fulfill the requirement under NDCC 14–05–17 of six-month residency. We disagree.

A legal residence is the place where a person has established her home, where she is habitually present, and to which she intends to return when she is away. *Dietz v. City of Medora,* 333 N.W.2d 702, 705 (N.D.1983). A person's intention is the paramount factor in determining legal residence. *Graham v. Graham,* 9 N.D. 88, 81 N.W. 44, 45 (1899). Legal residence is a question of fact that we review under the clearly erroneous standard. *Habberstad v. Habberstad,* 444 N.W.2d 703, 704 (N.D.1989). The burden of proving a change of legal residence is on the person alleging the change. *Keating v. Keating,* 399 N.W.2d 872, 875 (N.D.1987). This record supports the trial court's finding that McComb was a North Dakota resident at the appropriate times. McComb moved to Fargo in May 1990, obtained a license to practice medicine in North Dakota, purchased a home in Fargo, and obtained employment at Fargo Clinic MeritCare. Although McComb lived in the UAE with As-

sad for some time, there is evidence McComb took a leave of absence from her Fargo employment and lived with Assad only in an effort to bring Nora back to North Dakota. Assad failed to meet his burden of showing McComb changed her legal residence. The trial court's finding that McComb satisfied the six-month residency requirement is not clearly erroneous.[1]

█ Assad also asserts that he was prejudiced by the trial court's decision, made under its local rule on affidavit practice, to not allow him to testify at the hearing. We disagree.

Regardless of the specifics of the local rule, when a motion is based on facts not appearing of record, NDRCivP 43(e) allows the trial court to hear the matter on affidavits presented by the parties or, in its discretion, to expand the hearing by allowing more evidence or testimony. *See Sandbeck v. Rockwell*, 524 N.W.2d 846, 851 (N.D.1994). In this case, the trial court accepted Assad's affidavit. Assad made no offer of proof in the trial court, and has failed to inform us on appeal, what testimony he would have given that was not already contained in his affida-

vit. *See Sandbeck*; NDREv 103(a)(2). Assad's claim of prejudice is unsupported.

We conclude the trial court properly exercised its discretion in ruling that Assad did not establish sufficient grounds for setting aside the judgment of annulment, and in ordering Assad to pay $300 for McComb's attorney fees. It is therefore unnecessary to consider Assad's arguments about the merits of the annulment action.

McComb requests attorney fees and costs on appeal under NDRAppP 38. Because the appeal is not frivolous, we deny the request.

The order is affirmed.

VANDE WALLE, C.J., SANDSTROM and NEUMANN, JJ., and THOMAS K. METELMANN, District Judge, concur.

THOMAS K. METELMANN, District Judge, sitting in place of LEVINE, J., disqualified.

---

1. The NDCC 14–05–17 six-month residency requirement specifies that it applies to an action for "divorce." There is no express residency requirement in the NDCC Chapter 14–04 provisions governing annulments. McComb did not assert that the six-month residency requirement is inapplicable to an action for annulment.