[No. 30735-9-II.   Division Two.   March 22, 2005.]

RENAN PASCUA, *Respondent*, v. CRYSTAL HEIL ET AL., *Petitioners*.

522

*David A. Jones* (of *Jones Law Firm, P.S.*) and *Gregory S. Worden* and *M. Colleen Barrett* (of *Barrett & Worden, P.S.*), for petitioners.

*John J. Meske* and *Michael A. Stewart*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — On interlocutory review, Crystal and Charles Heil[1] contend that the trial court erred in failing to dismiss the personal injury complaint against them because they were improperly served by mail and publication. Because the evidence does not support the authorizing court's findings that the respondent made a diligent search for Crystal or that Crystal had departed the state with the intent to avoid service of process, service on Crystal was improper. In addition, because Charles was a Florida resident and the method of service utilized by the respondent requires the defendant to be a Washington resident, service on Charles was also improper. Concluding that service of process on both Crystal and Charles was improper, we reverse.

## FACTS

¶2 On June 10, 2000, Renan Pascua and 20-year-old Crystal were involved in a car accident in Thurston County. At that time, Crystal gave the investigating officer her personal information, including her phone number and Lacey, Washington, address and the Florida post office box of Charles, the registered owner of the vehicle.

¶3 On March 13, 2003, Pascua filed an amended complaint against Crystal and Charles. Pascua later obtained orders authorizing him to serve the Heils by publication in a Thurston County newspaper and by mail at the Lacey address. The affidavits and motions in support of the orders stated only that Crystal could not be found at the Lacey address, that Pascua had "attempted a diligent search" to locate the Heils, and that the Heils had "intentionally conceal[ed] themselves to avoid service." Clerk's Papers (CP) at 19, 27.

---

[1] The parties' first names will be used for clarity.

¶4 On June 17, 2003, the Heils filed a motion to dismiss in which they asserted that the three-year statute of limitations[2] had run because Crystal had not been properly served and that the amended complaint failed to state a cause of action against Charles. The Heils did not assert in the motion that Charles had been improperly served.[3] In response to the motion to dismiss, the trial court authorized Pascua to amend nunc pro tunc the affidavits in support of his motions for service by mail and publication. The amendment provided specifics as to the efforts undertaken to locate the Heils.

¶5 After allowing the amendments, the superior court denied the Heils' motion to dismiss. It concluded that Crystal had been properly served, and issued the following findings: (1) on March 15, 2003, a process server went to the Lacey address and discovered that Crystal no longer resided there; (2) ABC Legal Messenger Service (ABC) had been unable to locate Crystal through a "metro search" of public records in Washington; (3) ABC had been unable to serve Crystal on an unrelated matter at the Lacey address; (4) the telephone number Crystal had given at the time of the accident was disconnected and there was no forwarding telephone number; (5) the apartment manager of the Lacey address complex advised that, pursuant to company policy, no forwarding address or other identifying information for Crystal was available unless she specifically authorized its release; (6) telephone directory assistance revealed no phone number for Crystal in Washington; (7) Crystal had not been located through an internet search using various search engines; and (8) neither Pascua nor his attorney had received any written notice from Crystal that she had moved residences or changed her telephone number.

¶6 Based on these findings, the court concluded that Pascua had made a "diligent, honest and reasonable search" to locate Crystal (CP at 127), and that because

---

[2] RCW 4.16.080(2).

[3] But they did raise the improper service defense as to both Charles and Crystal in their answer.

Crystal Heil had disconnected her telephone number, did not list a forwarding telephone number, did not obtain a new telephone number, did not leave authorization at her last known address to provide information on her change of address, did not inform Plaintiff or his attorney of her change of address, and did not list her address or telephone number for public knowledge, it was reasonable for Plaintiff to believe that Crystal Heil was no longer a resident of the State of Washington, or could not be found within the State of Washington. Furthermore, that it was reasonable for Plaintiff to believe that defendant, being a resident of Washington, had departed from the State with the intent to defraud her creditors, or to avoid service of summons, or was keeping herself concealed in the State of Washington with the like intent.

CP at 127. The court also noted in passing, and Pascua conceded, that service of process on Charles was improper. But the trial court did not issue a ruling on the claim that the complaint failed to state a cause of action against Charles.

¶7 Thereafter, this court granted the Heils' motion for discretionary review. We address whether Crystal and Charles were properly served.

## ANALYSIS

¶8 First and basic to personal jurisdiction is service of process. *Painter v. Olney*, 37 Wn. App. 424, 427, 680 P.2d 1066, *review denied*, 102 Wn.2d 1002 (1984). Statutes authorizing service by means other than personal service, i.e., constructive and substitute service, require strict compliance. *Painter*, 37 Wn. App. at 427. Substitute service by mail or constructive service by publication is permissible when the plaintiff sets forth the following facts: (1) that the defendant could not be found in Washington after a diligent search; (2) that the defendant was a resident of Washington; and (3) that the defendant had either left the state or concealed himself within it, with intent to defraud creditors or avoid service of process. RCW 4.28.100(2) (requirements for constructive service by publication); CR 4(d)(4) (autho-

rizing substitute service by mail "[i]n circumstances justifying service by publication"); *Charboneau Excavating, Inc. v. Turnipseed*, 118 Wn. App. 358, 362-63, 75 P.3d 1011 (2003), *review denied*, 151 Wn.2d 1020 (2004).

¶9 Whether service of process on Charles and Crystal was proper is an issue we review de novo. *Turnipseed*, 118 Wn. App. at 361. The question on review is whether the facts in Pascua's motion for an order authorizing constructive and substitute service were sufficient to allow the court to authorize service by publication and mail on Charles and Crystal. The initial affidavits stated only that Pascua had "attempted a diligent search" to locate Charles and Crystal and that they had "intentionally conceal[ed] themselves to avoid service." CP at 19, 27. Both parties agree that these affidavits were insufficient to authorize service by publication and mail. A bare recitation of the statutory factors required to obtain jurisdiction is insufficient; the plaintiff must produce the specific facts which support the conclusions required by the statute. *Turnipseed*, 118 Wn. App. at 362; *Kent v. Lee*, 52 Wn. App. 576, 579-80, 762 P.2d 24 (1988).

¶10 But Pascua argues that the trial court "cured" the facial deficiency when it permitted him to amend the affidavits nunc pro tunc. It was this amendment that provided the detailed facts which the trial court used to deny Charles and Crystal's motion to dismiss. But a "nunc pro tunc order is limited to permitting the record to reflect *what actually happened*, not to add new facts." *Kent*, 52 Wn. App. at 580. In this context, such amendment could include only clarifying or supplemental information presented to the judge authorizing substitute service, but it could not add information never presented to the judge. An order permitting substitute or constructive service, much like a search warrant in criminal cases, is reviewed based on only that information *actually* before the issuing magistrate. *See* RCW 4.28.100 (requiring that the affidavit be filed prior to commencement of publication); *State v. Ibarra*, 61 Wn. App. 695, 701-03, 812 P.2d 114 (1991). Here, Pascua's supple-

mental affidavits do not establish that the magistrate authorizing substitute service was aware of the additional information in the amended affidavits. Therefore, as a matter of law the new information cannot "cure" the deficiencies in the initial application for substitute and constructive service.

¶11 Our holding here is guided by a fundamental constitutional principle: Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of a pending action. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). Because substitute and constructive service are not the ideal methods of providing such notice, an order authorizing such service must not be based on conclusory statements which the plaintiff assumes can be filled in later; the authorizing judge must closely scrutinize the facts provided, rather than merely serving as a rubber stamp, to ensure that substitute or constructive service is being used only as a last resort.

¶12 The order allowing the amendment of the affidavits nunc pro tunc had no authority to supplement the affidavit before the initial judge who authorized substitute and constructive service with information never presented. But even if we view the undisputed facts in the amended affidavits as if they had been timely presented to the authorizing judge and in the light most favorable to Charles and Crystal,[4] we conclude that they were insufficient as a matter of law to authorize substitute or constructive service. Pascua did not demonstrate that he conducted a diligent search to locate Crystal and that he reasonably believed that she had concealed herself or departed the state with the intent to avoid service of process.[5]

---

[4] *See Huff v. Budbill*, 141 Wn.2d 1, 15, 1 P.3d 1138 (2000).

[5] Our conclusion that the initial affidavits were deficient and that the trial judge lacked authority to supplement them with new information makes it unnecessary for us to address this issue. But we do so because Crystal and Charles did not object to the amendments or raise the issue in this appeal. *See generally* RAP 2.5(a) (failure to object generally waives nonconstitutional issues); *Cowiche*

■ ¶13 "Due diligence" requires that the plaintiff make "honest and reasonable efforts to locate the defendant." *Martin v. Meier*, 111 Wn.2d 471, 482, 760 P.2d 925 (1988) (defining "due diligence" under nonresident motorist statute). While reasonable diligence does not require the plaintiff to employ all conceivable means to locate the defendant, it does require the plaintiff to follow up on any information possessed that might reasonably assist in determining the defendant's whereabouts. *Carson v. Northstar Dev. Co.*, 62 Wn. App. 310, 316, 814 P.2d 217 (1991).

¶14 In this case, the means Pascua used to locate Crystal boil down to the following: attempts to contact her at the phone number and address listed in the police report; contacting the apartment manager at the Lacey address; and searches utilizing a public records index, a phone directory, and internet search engines. While these efforts might generally be considered sufficient, they are not here. What Pascua did not do was attempt to locate Crystal through contacting Charles, the registered owner of the vehicle she was driving at the time of the accident. Charles's contact information was in the police report. While "[n]ot all conceivable means need be employed, . . . the accident report, if made, must be examined and the information therein investigated with reasonable effort." *Martin*, 111 Wn.2d at 482; *accord Parkash v. Perry*, 40 Wn. App. 849, 853-54, 700 P.2d 1201 (1985) (finding that the plaintiff did not conduct a diligent search where he failed to follow up on information in the accident report and did not pursue a tip from the defendant's former neighbor about where she might have moved). Reasonable diligence requires contacting known third parties who may have knowledge of the defendant's whereabouts. *Martin*, 111 Wn.2d at 482 (where police report listed the defendant as attending college, the plaintiff exercised diligence by inquiring with the college about the defendant's location); *Turnipseed*, 118 Wn. App. at 363 (concluding that search

*Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 808, 828 P.2d 549 (1992) (unchallenged findings are verities on appeal).

was inadequate where the plaintiff relied on process server but failed to contact the defendant's wife or daughter "even though it had their address and phone number, and even though they probably would have known [the defendant's] address and whereabouts"). Once Pascua's other efforts were unsuccessful, it was unreasonable not to contact Charles to see whether he knew and would provide Crystal's current location, particularly because Pascua did seek to serve Charles at that address after he obtained an order authorizing substitute service by mail.

¶15 Nevertheless, Pascua asserts that he was not obliged to follow up with Charles because the relationship between Charles and Crystal was unknown and there was no guaranty that Charles would aid in locating Crystal. We disagree. Crystal, at 20 years old, was driving a car registered to a man with the same surname. It was unreasonable to conclude that they did not have the quality of relationship where Charles *might* know of her whereabouts. Moreover, if, as Pascua asserted in his motion opposing discretionary review, the basis for Charles's liability is under the family car doctrine,[6] Pascua had already reasonably inferred that Charles was Crystal's father.

¶16 Concerning Pascua's second argument that contacting Charles would not have been fruitful, the likelihood of success is not determinative.[7] Where a reasonable lead exists, it is the act of pursuing that lead, not its ultimate success, which evidences due diligence. A plaintiff cannot throw his hands in the air and claim that he conducted a diligent search when he failed to pursue information which,

---

[6] The court in *Cameron* stated:

Liability under the family car doctrine arises when (1) the car is owned, provided or maintained by the parent (2) for the customary conveyance of family members and other family business and (3) at the time of the accident the car is being driven by a member of the family for whom the car is maintained, (4) with the express or implied consent of the parent.

*Cameron v. Downs*, 32 Wn. App. 875, 879-80, 650 P.2d 260 (1982).

[7] During oral argument, Pascua's counsel related that Charles refused to sign for a certified letter containing a copy of the summons and complaint. This attempted service, however, occurred *after* the court had authorized substitute service and was not an attempt to locate Crystal to effectively serve her.

on its face, had a reasonable possibility of being fruitful. Pascua concedes as much: "In hindsight, knowing now that Charles Heil is Crystal's father, Mr. Pascua might have attempted to contact him to see if he knew Crystal's location." Br. of Resp't at 11.

¶17 Because Pascua's amended affidavits did not demonstrate that he conducted a diligent search, the order authorizing service by mail and publication was improper. In addition, we briefly note that Pascua also failed to establish a reasonable belief that Crystal had concealed herself or departed the state with the intent to avoid service of process. Relying on the amended affidavit, the trial court found that the following facts suggested that Crystal was attempting to avoid service: she had changed her residence and phone number, she did not provide a forwarding telephone number or address, she did not obtain a listed phone number, and she did not inform Pascua or his attorney of her change of address.

¶18 But nothing in the court's findings suggests that Crystal was aware of Pascua's suit or his attempts to serve her. *See Turnipseed,* 118 Wn. App. at 364 (concluding that evidence was insufficient where, taken as a whole, it merely suggested that the defendant was ignorant of the existence of the suit). That Crystal had changed addresses and phone numbers in the *three years* between the accident and the attempted service of process does no more than suggest that Crystal is within the norm of Washington residents.[8] *See Kennedy v. Korth,* 35 Wn. App. 622, 624, 668 P.2d 614 (concluding that moving prior to

---

[8] Although the trial court found that a "metro search" of public records had been conducted, the record does not reflect what this search involves. At oral argument, Pascua's attorney admitted that he did not know whether a "metro search" includes a search of records from the Department of Licensing. If it did, and there was no record as to Crystal's address since leaving the Lacey address, this might have been evidence of an intent to avoid service of process. *See* RCW 46.20.205(1) (requiring an individual with a driver's license to notify the Department of Licensing within 10 days of any change of address). The record does contain an affidavit from a process server who stated that he checks records from the Departments of Licensing and Motor Vehicles. But the record suggests that he was not involved in serving Crystal and it does not indicate whether the process server worked for ABC.

filing of lawsuit negates any assertion that defendant left Washington to avoid service of process), *review denied*, 100 Wn.2d 1026 (1983). As to the lack of a listed phone number, an individual is not required to have a listed phone number, and a person's lack of a "public recorded persona," without more, does not raise an inference that he or she is attempting to defraud creditors or avoid process. *Bruff v. Main*, 87 Wn. App. 609, 613, 943 P.2d 295 (1997). Finally, there is no support for the trial court's implied finding that Crystal had an affirmative duty to report to Pascua or his attorney. Far from an obligation to assist service of process, this court has held that a defendant's only duty is to accept service when validly tendered and not to evade service. *Thayer v. Edmonds*, 8 Wn. App. 36, 41, 503 P.2d 1110 (1972), *review denied*, 82 Wn.2d 1001 (1973).

¶19 In sum, the order authorizing service by mail and publication was invalid and service of process on Crystal was not effective. This conclusion, however, does not mandate dismissing the claim against Crystal. Because "service of process on one defendant tolls the statute of limitation as to unserved defendants," the disposition of this case actually turns on whether Pascua's attempts to serve Charles were effective. *Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 327, 815 P.2d 781 (1991). If service of process on Charles was proper, the statute of limitations was tolled as to Crystal, and Pascua could, but need not, re-serve her. But if Charles was improperly served, the case against him and Crystal must be dismissed. *Sidis*, 117 Wn.2d at 329-30 ("A plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed.").

¶20 Whether Charles was properly served is an issue that was technically not decided below. The issue was not briefed by either party on the motion for summary judgment, but was raised in oral argument before the trial court:

THE COURT: . . . You got an order that authorized service by mail or by publication for all defendants, which would include Charles?

[Pascua's Counsel]: Yes, Your Honor.

. . . .

THE COURT: . . . At the time you [did not know that Charles was a Florida resident]. But now, understanding that he is a resident of Florida, is there any doctrine for a court to allow service by mail or publication?

[Pascua's Counsel]: . . . No, I think, Your Honor, is the answer to that.

Report of Proceedings at 15-16. Although Pascua's counsel had conceded the issue, the trial court specifically indicated that it was not going to issue a ruling on the propriety of service on Charles.

¶21 Although this court generally will not address issues the trial court has not decided, we choose to address the propriety of service on Charles because doing so is necessary to determine whether the trial court obtained jurisdiction over Crystal, its resolution furthers the interest of judicial economy, and the issue is clear. *See generally* RAP 2.5(a); *Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 303, 825 P.2d 324 (1992). As Pascua conceded in the trial court, the method of service employed on Charles was improper. Service by publication or mail on a nonresident individual is permitted only in very limited circumstances, including divorce actions and actions concerning real and personal property. RCW 4.28.100(3)-(6), (8); CR 4(d)(4). Pascua did not base service on one of these exceptions, instead opting for RCW 4.28.100(2), which specifically requires the defendant to be a Washington resident.[9]

¶22 Because service of process was improper as to both Crystal and Charles, the trial court erred in denying their

---

[9] Although Pascua asserted in the trial court that he was unaware of where Charles resided, the only information Pascua had, as set forth in the police report, was that Charles was a Florida resident.

motions to dismiss.[10] We therefore reverse and remand for entry of an order of dismissal.

BRIDGEWATER, J., concurs.

¶23 HOUGHTON, J., (dissenting) — I believe the trial court acted within its broad discretion when it granted Pascua's unopposed motion to amend nunc pro tunc. As such, I respectfully dissent.

¶24 RCW 4.28.100 governs service by publication. For purposes of RCW 4.28.100(2), the plaintiff must establish "(1) that his efforts to personally serve the [resident] defendant were reasonably diligent, and (2) that the defendant either (a) left the state with intent to defraud creditors or avoid service, or (b) concealed himself within the state with intent to defraud creditors or to avoid service." *Charboneau Excavating, Inc. v. Turnipseed*, 118 Wn. App. 358, 362-63, 75 P.3d 1011 (2003) (footnote omitted), *review denied*, 151 Wn.2d 1020 (2004).

¶25 The mere recitation of these statutory factors is insufficient. *In re Marriage of Logg*, 74 Wn. App. 781, 785, 875 P.2d 647 (1994). Rather, the affidavit must include specific facts supporting the statutory conclusions. *Logg*, 74 Wn. App. at 785. As the majority notes, the parties do not dispute the insufficiency of the original affidavits. Majority opinion at 527.

¶26 But defective affidavits may be cured nunc pro tunc. *First Fed. Sav. & Loan Ass'n v. Ekanger*, 93 Wn.2d 777, 779, 613 P.2d 129 (1980). Such amendments are permissible to "alter[ ] the record to reflect what actually happened." *Logg*, 74 Wn. App. at 786; *see also Kent v. Lee*, 52 Wn. App. 576, 580, 762 P.2d 24 (1988).

¶27 Our Supreme Court addressed this issue in *Ekanger*, 93 Wn.2d at 778-79. There, First Federal sought service by publication. *Ekanger*, 93 Wn.2d at 780. In its supporting affidavit, First Federal noted unsuccessful at-

[10] Our conclusion makes it unnecessary to address Charles's claim that the trial court erred in not dismissing for failure to state a claim.

tempts at personal service. *Ekanger*, 93 Wn.2d at 780. But it did not specifically state the nature of the underlying action. *Ekanger*, 93 Wn.2d at 780. Nor did it state that it mailed copies of the summons and complaint to Ekanger's residence. *Ekanger*, 93 Wn.2d at 780. Accordingly, it submitted a defective affidavit. *See Ekanger*, 93 Wn.2d at 778.

¶28 The court held that the trial court acted within its discretion in allowing nunc pro tunc amendment of the defective affidavit. *Ekanger*, 93 Wn.2d at 782. It noted that First Federal actually complied with the statutory requirements, making the defect one of form and not substance. *Ekanger*, 93 Wn.2d at 782. Further, it explained that Ekanger did not suffer material prejudice because she had actual notice of the action. *Ekanger*, 93 Wn.2d at 782.

¶29 Similarly here, the trial court acted within its discretion. Pascua actually complied with the statutory requirements. He conducted a reasonable and diligent search prior to service by publication. This search included: (1) several attempts at personal service at Crystal Heil's last known address; (2) searches using Qwest directory services for any "Crystal Heil" within the state of Washington; (3) online searches through Qwestdex, the United States Postal Service, and other search engines; (4) service by certified and first-class mail; and (5) attempts to reach Crystal by telephone.[11] Although Pascua did not employ every conceivable search method available, his efforts represent a reasonable and diligent attempt. Given this extensive search, it was not unreasonable to believe that Crystal intentionally concealed herself to avoid service of process. The amended affidavit did not add "new facts," rather it clarified what had actually occurred. Any defect in the affidavit goes to form, not substance.

¶30 Further, Crystal and Charles Heil did not oppose the motion to amend nunc pro tunc. Certainly, it is not manifestly unreasonable to grant an unopposed motion. And the Heils did not assign error to this decision on appeal,

---

[11] Because service on Charles was not addressed below or briefed by the parties, there is no need to consider the issue further.

suggesting that they do not believe that they suffered material prejudice. As such, the trial court's decision was based on tenable grounds and reasons.

¶31 Because the trial court acted within its discretion in allowing amendment nunc pro tunc, I would affirm the decision below. Accordingly, I dissent.