75 P.3d 1011 (2003)
CHARBONEAU EXCAVATING, INC., d/b/a Charboneau Construction & Supply, a Washington corporation, Respondent,
v.
Bertha Jane TURNIPSEED, Personal Representative of the Estate of Pernelle Raymond Turnipseed, Appellants.
No. 28605-0-II.
Court of Appeals of Washington, Division 2.
September 9, 2003.
As Amended October 7, 2003.
*1012 Robert J. Chicoine, Attorney at Law, Seattle, WA, Nicole M. Chicoine, Attorney at Law, Seattle, WA, for Appellants.
Edward Greely Hudson, Smith Alling Lane, Tacoma, WA, for Respondent.
MORGAN, J.
The issue in this case is the validity of an order permitting service by publication. Holding that the order was invalid, we reverse.
Pernelle Raymond Turnipseed and Bertha Jane Turnipseed were husband and wife for 52 years.[1] Their adult daughter is Connie Hale. Turnipseed died in 1999, and Bertha was appointed to be personal representative of his estate. At the times material here, Bertha owned part of BJ's Bingo Hall.
In 1997, Charboneau Excavating, Inc., acting through its president Jeffrey Charboneau, sued "Ray Turnipseed, a married man acting in his individual capacity[.]"[2] Charboneau claimed that Turnipseed had breached a written excavation contract signed by Dennis Allen and Jeffrey Charboneau on April 27, 1992. The contract was not signed by Turnipseed.
Charboneau knew that Turnipseed frequented BJ's, and it tried to serve him there *1013 several times.[3] It also checked postal records, Pierce County Voters records, and Social Security records, all without success.
Charbonneau tried to serve Turnipseed at an address that turned out to be incorrect. The person residing at that address said that he thought Turnipseed was presently living off 75th Street in Lakewood. Charboneau did not follow up, as far as the record shows. Nor did it search the Pierce County Assessor's records, which showed Turnipseed's correct address of 7550 68th Avenue West.[4]
Charboneau did not contact Bertha Turnipseed, even though it knew she was married to Turnipseed and a part owner of BJ's. Nor did Charboneau contact Connie Hale or her husband, a vice president of BJ's, even though it had Hale's correct address and phone number[5] and knew she was Turnipseed's adult daughter. According to Jeffrey Charboneau's later testimony, he elected not to contact Connie Hale because "[t]his isn't Connie's problem. This is my problem."[6]
In the end, Charboneau paid its process servers $36 for their attempts to find and serve Turnipseed. They were not successful, and nothing in the record shows that Turnipseed ever knew he was being sued on the 1992 contract between Allen and Charboneau.
On August 13, 1997, Charboneau moved ex parte for an order permitting service by publication. A court commissioner granted the motion, and Charboneau published notice soon thereafter. He also sent a copy of the summons and complaint to BJ's, where a hostess signed the certified mail receipt. On October 29, 1997, the trial court granted a default judgment against Turnipseed in the amount of $77,940 ($39,804 principal, $36,271 prejudgment interest, $1,864 fees and costs).
Turnipseed died on August 1, 1999. Bertha Turnipseed was appointed personal representative of his estate. She gave notice to potential creditors, and Charboneau responded with a claim based on its default judgment. Charboneau's claim was rejected, so it filed this action to enforce its default judgment.
In November 2001, Charboneau moved for summary judgment. On January 28, 2002, the trial court ruled that Charboneau had attempted personal service with "due diligence"[7] and that it was entitled to enforce its judgment against Turnipseed's estate. The trial court also awarded reasonable attorney fees to Charboneau, stating that "the equity principle applies."[8]
The estate now appeals. The dispositive issue is whether the trial court properly found that service by publication was valid. We review de novo.[9]

I.
RCW 4.28.100, the governing statute for service by publication, states:
When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his agent, or attorney, with the clerk of the court, stating that he believes that the defendant is not a resident of the state, or cannot be found therein, and that he has deposited a copy of the summons ... and complaint in the post office, directed to the defendant at his place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons ...
*1014 (1)....
(2) When the defendant, being a resident of this state, has departed therefrom with intent to defraud his creditors, or to avoid the service of a summons, or keeps himself concealed therein with like intent....
One claiming jurisdiction under this statute has the burden of showing proper service by publication.[10] He cannot meet this burden merely by reciting the relevant statutory factors in conclusory fashion; rather, he must produce "facts which support the conclusions required by the statute."[11] Such facts must show (1) that his efforts to personally serve the defendant were reasonably diligent,[12] and (2) that the defendant either (a) left the state with intent to defraud creditors or avoid service, or (b) concealed himself within the state with intent to defraud creditors or to avoid service.[13]
Given that Charboneau does not claim that Turnipseed left the state, we face two questions here. (1) Does the record show that Charboneau acted with reasonable diligence while attempting to serve Turnipseed? (2) Does the record show that Turnipseed concealed himself within the state, with intent to defraud creditors or to avoid service?
The answer to the first question is no. As far as the record shows, Charboneau did not try to contact Bertha Turnipseed, even though it knew she was Turnipseed's wife and an owner of BJ's. It did not try to contact Connie Hale or her husband, even though it had their address and phone number, and even though they probably would have known Turnipseed's address and whereabouts. It did not check the assessor's records, which contained the address off 75th in Lakewood where Turnipseed had been living for several years.[14] It did not follow up on information that later proved correct (i.e., that Turnipseed was living off 75th in Lakewood).[15] It spent only $36 on process servers. It was not thorough, and it did not exercise reasonable diligence under these circumstances.
Likewise, the answer to the second question is no. Nothing in the record shows that Turnipseed was trying to conceal himself to avoid service of process, as opposed to simply being ignorant of the existence of the suit. Nothing in the record suggests that he *1015 was trying to evade service in other suits, or that any other suits were pending. Charboneau argues that certain hostesses at BJ's were untruthful or misleading because they wanted to help Turnipseed evade service, but even if they were, it is pure speculation to assert that Turnipseed participated in, encouraged, or even knew about their conduct. Charboneau has not shown that Turnipseed was concealing himself, or that he was doing so with intent to avoid service.
Concluding that Charboneau has not shown proper service, we hold that the trial court lacked jurisdiction to enter a default judgment, and that the judgment against Turnipseed must be set aside.[16] Accordingly, we reverse the summary judgment in favor of Charboneau[17] and direct that this declaratory judgment action be dismissed.[18]
Reversed.
We concur: BRIDGEWATER, J., and HUNT, C.J.
NOTES
[1] This is according to an obituary that Charboneau put into the record. Clerk's Papers (CP) at 86.
[2] CP at 286.
[3] Charboneau's process servers allege they were lied to or at least misled by employees at BJ's. BJ's employees deny that. We deem this dispute immaterial, as discussed more fully below. Even if the process servers' version is correct, nothing in the record shows that Turnipseed was aware of, much less participated in or encouraged, the conduct of BJ's employees.
[4] In a 2001 deposition, Bertha Turnipseed stated that she and Turnipseed had moved to the Lakewood address "about seven or eight years ago." CP at 124.
[5] Charboneau had done work for Hale in the past.
[6] CP at 384.
[7] Report of Proceedings (RP) at 26.
[8] RP at 41.
[9] Bruff v. Main, 87 Wash.App. 609, 611, 943 P.2d 295 (1997).
[10] In re Dependency of A.G., 93 Wash.App. 268, 277, 968 P.2d 424 (1998); see also Lee v. Western Processing Co., Inc., 35 Wash.App. 466, 469, 667 P.2d 638 (1983) ("Proper service of the summons and complaint was necessary to invoke the court's jurisdiction") (citing RCW 4.28.020).
[11] In re Marriage of Powell, 84 Wash.App. 432, 437, 927 P.2d 1154 (1996) (citing In re Marriage of Logg, 74 Wash.App. 781, 785, 875 P.2d 647 (1994)); see also Jones v. Stebbins, 122 Wash.2d 471, 482, 860 P.2d 1009 (1993) (affidavit must "clearly show[ ] all the conditions required, although it `does not literally follow the wording of the statute'") (quoting Jesseph v. Carroll, 126 Wash. 661, 666, 219 P. 429 (1923)); Bruff, 87 Wash.App. 609 at 612, 943 P.2d 295 ("A bare recitation of the statutory factors required to obtain jurisdiction is insufficient."); Kent v. Lee, 52 Wash.App. 576, 579, 762 P.2d 24 (1988) ("An affidavit that omits the essential statutory elements is as good as no affidavit at all.").
[12] Brenner v. Port of Bellingham, 53 Wash.App. 182, 188, 765 P.2d 1333 (1989).
[13] Bruff, 87 Wash.App. at 612, 943 P.2d 295; see also Kent, 52 Wash.App. at 579-80, 762 P.2d 24 (must set forth facts showing a reasonably diligent search and that RCW 4.28.100 elements are satisfied).
[14] See Dobbins v. Mendoza, 88 Wash.App. 862, 873, 947 P.2d 1229 (1997) ("Tax records readily available to the plaintiff show the defendants' names and an address for them. At a minimum, we believe due diligence would require that personal service be attempted there, and that a copy of the summons and complaint be mailed to the Mendozas at that address if personal service could not be effected there.").
[15] See Brenner, 53 Wash.App. at 187, 765 P.2d 1333 ("[W]here a plaintiff possesses information that might reasonably assist in determining a defendant's whereabouts, but fails to follow up on that information, the plaintiff has not made the honest and reasonable effort necessary to allow for service by publication.") (citing Martin v. Meier, 111 Wash.2d 471, 481-82, 760 P.2d 925 (1988) (due diligence in the context of RCW 46.64.040)); see also Parkash v. Perry, 40 Wash. App. 849, 853, 700 P.2d 1201 (1985) (no reasonable diligence where affidavits in support of publication did not indicate that information contained in the accident report or appended to the return of service was investigated); Painter v. Olney, 37 Wash.App. 424, 427, 680 P.2d 1066 (no reasonable diligence where additional information was not followed up), review denied, 102 Wash.2d 1002 (1984).
[16] Dobbins, 88 Wash.App. at 871, 947 P.2d 1229 ("When a court lacks in personam jurisdiction over a party, any judgment entered against that party is void."); Allstate Ins. Co. v. Khani, 75 Wash.App. 317, 324, 877 P.2d 724 (1994) ("a default judgment entered without proper jurisdiction is void") (quoting In re Marriage of Markowski, 50 Wash.App. 633, 635-36, 749 P.2d 754 (1988)).
[17] See Dobbins, 88 Wash.App. at 871, 947 P.2d 1229.
[18] Nothing herein affects Charboneau's right, if any, yet to effect proper service in the contract action filed in 1997. We have neither considered nor addressed whether Charboneau presently has such a right.