# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

LYSANDRA NESS, )    NO. 72762-1-I
    )
             Appellant, )
    )    DIVISION ONE
             v. )
    )
JIAN SONG and JANE DOE SONG, )    UNPUBLISHED OPINION
husband and wife, and the marital )
community, )    FILED: March 2, 2015
             Respondents. )
_____ )

LAU, J. — Lysandra Ness appeals the trial court's dismissal of her personal injury action on summary judgment. Ness argues that (1) the trial court erred when it failed to consider her tardy summary judgment response and (2) the trial court erred when it concluded that she failed to satisfy the statutory requirements for service by publication. We conclude that the trial court acted well within its discretion when it declined to consider Ness's late response brief and declarations. But even if the trial court had considered these documents, they fail to establish the necessary intent required under RCW 4.28.100(2)—service by publication. We affirm.

## FACTS

The facts are not disputed. In April 2013, Lysandra Ness sued Jian Song and Jane Doe Song for personal injury arising from a 2010 automobile accident. Ness

unsuccessfully attempted to serve Song at his home address. Consequently, Ness attempted service by publication.

Song filed a motion for summary judgment on October 2, 2013, arguing that Ness failed to comply with the statutory requirements for service by publication. The summary judgment was scheduled for hearing on November 8. Under CR 56(c), Ness had until October 28 to file a response. Ness received Song's motion by fax on October 2. On October 3, Ness's attorney, Ronald Ness, left his office to attend a law school reunion in Montana. He returned from the reunion on October 6. He did not return to his office on October 7. On October 8, attorney Ness had hip replacement surgery. He did not return to his office until October 29. At the summary judgment hearing, attorney Ness conceded he knew about Song's motion while he was out of his office.

Ness filed and served a response brief and declarations opposing summary judgment on November 4—four days before the hearing in violation of CR 56(c). Along with the response brief, Ness filed declarations and affidavits purporting to demonstrate proper service. These documents were filed after Song had submitted his rebuttal brief. The court declined to consider Ness's response brief and declarations because they were untimely filed and served. The court granted Song's motion for summary judgment and dismissed Ness's lawsuit, concluding that Ness failed to provide adequate service of process. Ness appeals.

## ANALYSIS

### Standard of Review

We review a trial court's decision not to consider untimely filed documents for an abuse of discretion. O'Neill v. Farmers Ins. Co. of Wash., 124 Wn. App. 516, 521, 125 P.2d 134 (2004).

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court—viewing the facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794–95, 64 P.3d 22 (2003). A trial court properly grants summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

### Ness's Untimely Filed Response

Ness argues that the trial court erred when it refused to consider her response brief and declarations opposing Song's motion for summary judgment. Ness properly concedes that her response was untimely filed. Ness contends the trial court should have considered the tardy response because her attorney had a "valid reason" for the late filing. Br. of Appellant at 7. Specifically, he had been out of the office due to a law school reunion and hip replacement surgery. But because Ness failed to show excusable neglect, we conclude the trial court did not abuse its discretion when it declined to consider the late filings.

When a party fails to file a response to a motion for summary judgment before the deadline, courts may nevertheless consider the untimely pleadings "only if a motion is filed explaining why the failure to act constituted excusable neglect." Colo.

Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 660, 246 P.3d 835 (2011); CR 6(b)(2). A trial court's determination of whether the neglect was excusable is reviewed for an abuse of discretion. Brown v. Peoples Mortgage Co., 48 Wn. App. 554, 559, 739 P.2d 1188 (1987).

The Supreme Court discussed several factors to consider when determining excusable neglect:

1. The prejudice to the opponent;

2. The length of the delay and its potential impact on the course of judicial proceedings;

3. The cause for the delay and whether those causes were within the reasonable control of the moving party;

4. The moving party's good faith;

5. Whether the omission reflected professional incompetence, such as an ignorance of the procedural rules;

6. Whether the omission reflected an easily manufactured excuse that the court could not verify;

7. Whether the moving party had failed to provide for a consequence that was readily foreseeable; and

8. Whether the omission constituted a complete lack of diligence.

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 385, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). On balance, these factors weigh against considering Ness's tardy response, particularly factors 1, 2, 3, 7, and 8. Ness has failed to show excusable neglect.

Song filed his summary judgment motion on October 3, 2013. He served Ness's attorney on October 2, 2013. According to CR 56(c), Ness's response was due on October 28, 11 days before the November 8 summary judgment hearing.[1] Ness filed her response on November 4 and faxed a copy to Song's attorney after Song filed and served his rebuttal documents.

Song moved to strike the untimely response, contending, "The plaintiff's response is untimely and prejudices defendants' ability to respond." Ness responded by acknowledging his tardy response and claiming he "filed and served . . . as soon as was practical under the circumstances . . . ." In her attorney's declaration filed the day before the summary judgment hearing, Ness claimed he filed and served the response on November 4. He claimed he was out of the office beginning October 3 for his law school reunion and returned on October 6 but did not return to his office until October 7. He claims he had hip replacement surgery on October 8. He returned to work on October 29 and reviewed Song's summary judgment materials. He spent the next few days researching, obtaining affidavits from three witnesses,[2] and writing his response brief, which he filed on November 4. He concluded by stating, "It was physically

---

[1] CR 56(c) provides in part:
   The [summary judgment] motion and any supporting affidavits, memoranda of law, or other documentation shall be filed and served not later than 28 calendar days before the hearing. The adverse party may file and serve opposing affidavits memoranda of law or other documentation not later than 11 calendar days before the hearing. The moving party may file and serve any rebuttal documents not later than 5 calendar days prior to the hearing.

[2] But those affidavits show they were signed by the affiants on October 29, October 30, and November 4.

impossible for me to comply with the rule in CR 56 as I was not in my office, nor was I working in time to meet that deadline."

Even though he was out of his office, Ness knew about Song's motion. In his reply to Song's motion to strike the untimely filed response, Ness concedes that he received Song's motion for summary judgment by fax on October 2—the day before he left his office. Ness also conceded at argument before the trial court that he knew about Song's motion while out of the office. Despite knowledge of Song's motion and his upcoming law school reunion and surgery, Ness failed to notify opposing counsel or the court about his unavailability. Nor did he seek to continue the hearing until the day before the summary judgment hearing:

> THE COURT: Nobody is checking your materials while you're out of the office?
> MR. NESS: Yes. I knew it [Song's motion for summary judgment] was there, but there was nothing that I could do.
> THE COURT: There was nothing you could do? So nobody could call counsel and say, you know, I'm out of the office . . . ?
> MR. NESS: Other than that, I agree.

Report of Proceedings (Nov. 8, 2013) at 5. The tardy filings prejudiced Song by depriving him of an opportunity to rebut Ness's response. Ness's declaration detailing his reasons for filing a late response to Song's motion contains no evidence that he was unable to notify either opposing counsel or the court of his circumstances. Because Ness failed to produce any evidence that he was unable to notify opposing counsel or the court of his reunion and surgery prior to the deadline, he failed to establish

-6-

excusable neglect. Under these circumstances, we conclude the trial court acted well within its discretion when it declined to consider the untimely filed response.[3]

Service by Publication

But even if the trial court considered Ness's response, the outcome would have been the same because her late response and declarations fail to demonstrate that Song intended to avoid service. Therefore, we affirm the trial court's order dismissing Ness's lawsuit with prejudice.[4]

"First and basic to personal jurisdiction is service of process." Pascua v. Heil, 126 Wn. App. 520, 526, 108 P.3d 1253 (2005). "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). "Because substitute and constructive service are not the ideal methods of providing such notice, . . . the authorizing judge must closely scrutinize the facts provided, rather than merely serving

---

[3] While not the basis for the trial court's ruling, the trial court noted it never received a working copy of Ness's response as required by Pierce County Local Rule B(7):

> Working Copies. The assigned judicial department shall be furnished with a working copy of all motion papers. The working copies shall be delivered either directly to the judicial department or to the Court Administrator's office. Anyone e-filing motion papers shall be responsible for ensuring working copies are timely provided to the assigned judicial department. All working copies are to be delivered no later than the date and time they are required to be served on opposing parties.

[4] Ness does not dispute that her lawsuit is time barred absent proper service of process.

as a rubber stamp, to ensure that substitute or constructive service is being used only as a last resort." Pascua, 126 Wn. App. at 528.

RCW 4.28.100 allows service by publication when the defendant cannot be found and has absconded with the intent to defraud creditors or avoid service:

> When the defendant cannot be found within the state, and upon the filing of an affidavit of the plaintiff, his or her agent, or attorney, with the clerk of the court, stating that he or she believes that the defendant is not a resident of the state, or cannot be found therein, and that he or she has deposited a copy of the summons (substantially in the form prescribed in RCW 4.28.110) and complaint in the post office, directed to the defendant at his or her place of residence, unless it is stated in the affidavit that such residence is not known to the affiant, and stating the existence of one of the cases hereinafter specified, the service may be made by publication of the summons, by the plaintiff or his or her attorney in any of the following cases:
>
> . . . .
>
> (2) When the defendant, being a resident of this state, has departed therefrom with intent to defraud his or her creditors, or to avoid the service of a summons, or keeps himself or herself concealed therein with like intent.

RCW 4.28.100. Strict compliance with the statute is required for jurisdiction to attach when a summons is served by publication. Kent v. Lee, 52 Wn. App. 576, 579, 762 P.2d 24 (1988). Washington courts have interpreted the statute to mean that a party seeking an order allowing service by publication must show two elements. First, the party must demonstrate that he "made reasonably diligent efforts to personally serve the defendant." Boes v. Bisiar, 122 Wn. App. 569, 574, 94 P.3d 975 (2004). Second, the party must "set forth facts supporting a conclusion that [the defendant] had left the state or was concealing himself with intent to defraud creditors or avoid service of process." Bruff v. Main, 87 Wn. App. 609, 612, 943 P.2d 295 (1997); see also Charboneau Excavating, Inc. v. Turnipseed, 118 Wn. App. 358, 362–63, 75 P.3d 1011 (2003) ("One claiming jurisdiction under [RCW 4.28.100(2)] . . . must produce . . . facts [that] show (1)

-8-

that his efforts to personally serve the defendant were reasonably diligent, and (2) that the defendant either (a) left the state with intent to defraud creditors or avoid service, or (b) concealed himself within the state to defraud creditors or avoid service.").

Even if we assume, without deciding, that Ness made reasonably diligent efforts to locate and serve Song, Ness's response and declarations do not support a conclusion that Song left the state or was concealing himself with intent to defraud creditors or avoid service.[5] The intent requirement under RCW 4.28.100(2) is separate from the requirement that the plaintiff demonstrate he made reasonably diligent efforts to personally serve the defendant. See, e.g., Pascua, 126 Wn. App. at 526 ("Substitute service by mail or constructive service by publication is permissible when the plaintiff sets forth the following facts: (1) that the defendant could not be found in Washington after a diligent search, (2) that the defendant was a resident of Washington, and (3) that the defendant had either left the state or concealed himself within it, with intent to defraud creditors or avoid service of process."). The plaintiff must present facts raising an inference that the defendant is attempting to defraud creditors or avoid process. Bruff, 87 Wn. App. at 613; Pascua, 126 Wn. App. at 531. A record indicating the plaintiff was unable to locate the defendant is not enough to demonstrate the required intent. Bruff, 87 Wn. App. at 614. Further, there can be no finding of intent to defraud or avoid process when the record indicates the defendant was unaware of the lawsuit or

---

[5] In her appellate brief, Ness fails to even mention the intent element required by RCW 4.28.100(2). Ness argues that her affidavit and declarations indicate that she "undertook all the steps" necessary to show an "honest and reasonable effort" to locate Song. Br. of Appellant at 6. Ness fails to argue that the affidavit or declarations show that Song had the intent the statute requires for service by publication. See Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

the plaintiff's attempts to serve him. Pascua, 126 Wn. App. at 531 ("nothing in the court's findings suggests that Crystal was aware of Pascua's suit or his attempts to serve her."); Charboneau, 118 Wn. App. at 364 ("Nothing in the record shows that Turnipseed was trying to conceal himself to avoid service of process, as opposed to simply being ignorant of the existence of the suit.").

In Bruff, we held that the plaintiff failed to present facts raising an inference that the defendant intended to avoid service even though the plaintiff had made a reasonably diligent effort to find the defendant. Bruff, 87 Wn. App. 613–14. The plaintiff employed two private investigators who discovered the defendant had moved twice since the incident giving rise to the lawsuit. Bruff, 87 Wn. App. 614. The plaintiff also learned that the defendant had a history of credit problems, had no listed telephone number, and had never lived at the address provided on the accident report. Bruff, 87 Wn. App. at 613. The plaintiff even contacted the defendant's parents in an effort to locate him. Bruff, 87 Wn. App. at 613. We concluded that these facts, though demonstrating a diligent effort, failed to support an inference that the defendant intended to avoid service. Bruff, 87 Wn. App. at 614.

Division Two of this court has also held that service by publication is impermissible when the plaintiff fails to present facts raising an inference that the defendant intended to avoid service. Pascua, 126 Wn. App. at 531–32; Charboneau, 118 Wn. App. at 364. In Pascua, the plaintiff used means to locate the defendant similar to those used here by Ness.[6] Pascua, 126 Wn. App. at 529. The plaintiff

---

[6] "In this case, the means Pascua used to locate [defendant] boil down to the following: attempts to contact her at the phone number and address listed in the police

discovered that the defendant had changed residences and telephone numbers and had no current listed telephone number. Pascua, 126 Wn. App. at 531. The trial court found that these facts indicated the defendant was attempting to avoid service, but the court reversed, stating, "that [the defendant] had changed addresses and phone numbers in the three years between the accident and the attempted service of process does no more than suggest that [the defendant] is within the norm of Washington residents." Pascua, 126 Wn. App. at 531. Importantly, the court held that the facts presented by the plaintiff failed to demonstrate the intent required under RCW 4.28.100 because "nothing in the court's findings suggests that [the defendant] was aware of Pascua's suit or his attempts to serve her." Pascua, 126 Wn. App. at 531.

Similarly, in Charboneau the court held that the plaintiff had failed to show intent even though he had attempted personal service multiple times at two different addresses. Charboneau, 118 Wn. App. at 360–64. The court held that the plaintiff failed to make a reasonably diligent effort because he did not contact several individuals who could have provided him with the correct address. Charboneau, 118 Wn. App. at 363. The court also held, however, that the plaintiff failed to present facts raising an inference that the defendant intended to avoid service, despite the plaintiff's multiple unsuccessful attempts to personally serve the defendant. Charboneau, 118 Wn. App.

---

report; contacting the apartment manager at the Lacey address; and searches utilizing a public records index, a phone directory, and internet search engines. While these efforts might generally be considered sufficient, they are not here. What Pascua did not do was attempt to locate [defendant] through contacting . . . the registered owner of the vehicle she was driving at the time of the accident. [The owner's] contact information was in the police report. While '[n]ot all conceivable means need be employed, . . . the accident report, if made, must be examined and the information therein investigated with reasonable effort.'" Pascua, 126 Wn. App. at 529 (quoting Martin v. Meier, 111 Wn.2d 471, 482, 760 P.2d 925 (1988)).

at 364. Like in <u>Pascua</u>, the court concluded that the plaintiff had failed to provide any facts indicating the defendant was even aware of the lawsuit: "Nothing in the record shows that [the defendant] was trying to conceal himself to avoid service of process, as opposed to simply being ignorant of the existence of the suit." <u>Charboneau</u>, 118 Wn. App. at 364.

Here, even if Ness made sufficiently diligent efforts, nothing in the record indicates Song intended to avoid service. Ness submitted three declarations from Ronald Ness's secretary, Sheena Hudson, and two private investigators—James Harris and Susan Montez. Collectively, the declarations detail Ness's effort to serve Song. First, Hudson contacted Harris and instructed him to serve Song at a Tacoma address she obtained from the original police report of the accident. Harris attempted service at the Tacoma address but learned that Song no longer lived there. Second, Hudson then contacted Montez who, using an internet subscription search program, discovered Song's most recent address was in Covington, Washington. After receiving the new Covington address, Harris attempted service three times in an eight-day span—May 23, 28, and 31. Harris was unsuccessful, so he left his business card at the Covington address after the third attempt. Harris noted the house appeared vacant. No one left copies of the complaint and summons at the Covington address.

The declarations fail to set forth any facts indicating Song left the state or was concealing himself with the intent to defraud creditors or avoid service. Together, the declarations show that Ness attempted service at the address provided in the police report from the accident and then, after learning Song had moved, attempted service three times at Song's new address. At best, the declarations indicate only that Ness

-12-

attempted service at Song's residence when no one was home.[7] This is insufficient to demonstrate Song had the intent required under RCW 4.28.100(2). See Bruff, 87 Wn. App. at 614 ("the [plaintiffs'] affidavits contained no facts clearly suggesting that [the defendant's] change of residence, or any other conduct, was undertaken with the intent required by RCW 4.28.100(2). RCW 4.28.100(2) does not authorize service by publication merely because the [plaintiffs] were unable to locate [the defendant], despite diligent efforts.").

If anything, the record shows that Song was unaware of Ness's lawsuit and her attempts to serve him. Ness filed the lawsuit nearly three years after the accident occurred. Song admits that he moved to the Covington address shortly after the accident and continues to reside there. He also admits that he found the business card James Harris left on his doorstep, but he did not understand why the card was left there. Like in Pascua and Charboneau, "nothing in the record shows that [the defendant] was trying to conceal himself to avoid service of process, as opposed to simply being ignorant of the existence of the suit." Charboneau, 118 Wn. App. at 364; Pascua, 126 Wn. App. at 531.

Because Ness fails to demonstrate Song acted with the intent required by the statute, service by publication was improper.

---

[7] In her untimely filed response brief, Ness argued, "The plaintiff is not required to show facts that clearly suggest an attempt to avoid service. The plaintiff is only required to show that all statutory conditions are present for service by publication." But one of the necessary statutory conditions is a demonstration of intent. Bruff, 87 Wn. App. at 612; Pascua, 126 Wn. App. at 526.

## CONCLUSION

Because the trial court acted within its discretion when it declined to consider Ness's untimely filed response and because the response and declarations fail to demonstrate the necessary intent for service by publication, we affirm the trial court's order granting Song's motion for summary judgment of dismissal.

WE CONCUR: