**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| CHEROKEE BAY COMMUNITY CLUB, | ) | No. 81572-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WALTER E. BOSSHART and ANA R. BOSSHART, husband and wife, and their marital community, | ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Appellants. | ) | |
| | ) | |

MANN, C.J. — Walter and Ana Bosshart owned property in Maple Valley subject to the Cherokee Bay Community Club, a homeowners' association (Association). The Bossharts appeal the trial court's default order, as well as its order denying their motion to vacate default judgment and order of sale. The Bossharts argue that the trial court erred in (1) determining that the Association performed its due diligence prior to service by publication; (2) finding no sufficient cause to vacate the judgment under CR 60(b)(1); and (3) finding no sufficient cause to vacate the judgment under RCW 4.28.200. We disagree and affirm.

## FACTS

A. The Property

The Bossharts own property in Maple Valley, Washington subject to the governing documents of the Association. The governing documents include a declaration of restrictions, covenants and easements, as well as rules and regulations set out in the "community wide standards."

The Association determined that the Bossharts did not maintain their property in accordance with the Association's governing documents.[1] For example, weeds, overgrown grass, ivy, and blackberry vines covered the Bossharts' property, as well as piles of refuse and three vehicles with expired plates. Neighbors complained of rats and raccoons coming from the property. In addition, the home on the property was in poor condition. The front window and back door were broken. The gutters were falling off. The siding was covered in mildew and much of the paint was worn down to the point

---

[1] For example, the Association's covenants require that:
Each Lot shall be maintained in a clean, sightly condition at all times be kept free of litter, junk, containers, equipment and building materials . . . All refuse from use of lot shall be kept in sanitary containers which shall be concealed from view and regularly emptied.

No Lot shall be used in whole or part for storage of anything which will cause such Lot to appear in an unclean, disorderly or untidy condition. No noxious or offensive activity shall be permitted on any Lot nor shall anything be permitted on any Lot that may be or become a nuisance or unreasonably interfere with the use and enjoyment of any part of the Real Property.

The community wide standards include:

All vehicles parked in a unit's driveway, must be in running condition and kept in a clean order.

Planting areas must be weeded and edged.

[Lawn] areas cannot exceed 5" in height.

Homes shall be maintained in good repair. Examples: moss removed, gutters attached, porches and decks visible from the roadway in good repair, painting and roofing [in] good repair.

that wood was visible. Tree branches rested on the roof and one large branch had punctured the roof. The property was condemned, red-tagged, and squatters had repeatedly broken into the home.

Over the course of several years, the Association and its legal counsel notified the Bossharts of the ongoing violations of the governing documents. Pursuant to the Association's fine schedule, it began assessing fines against the Bossharts' property in May 2019. Consistent with the governing documents, the Association sent notices via first-class, certified mail to the property, a post office box (P.O. box) provided by the Bossharts, and by posting a notice on the property. The Bossharts took no action to ameliorate the property's condition.

B. Procedure

On May 16, 2019, the Association filed an action for declaratory relief, injunctive relief, receivership, personal judgment, and a decree of foreclosure, against the Bossharts. In order to serve the Bossharts, the Association sent a process server to the Bossharts' property. After multiple attempts, the Bossharts were never found home. The Association also mailed notice to the property and the Bossharts' P.O. box. The mail was returned marked "no mail receptacle," "unclaimed," and "box closed." The Association contacted an investigator to locate a current address for the Bossharts. The investigator searched the King County Tax Assessor's parcel summary, Whitepages.com, and Familytreenow.com, all to no avail.

On July 30, 2019, following the failed attempts to locate the Bossharts, the Association served the summons by publication under RCW 4.28.100. The Bossharts did not appear. The Association moved for, and was granted, an order of default on

October 2, 2019.  The Association then moved for declaratory relief, injunctive relieve, personal judgment, and a decree of foreclosure.  On October 31, 2019, the trial court entered an order for declaratory relief, injunctive relief, and default judgment for the accumulated fines and attorney fees.  The judgment and order provided that the property would be foreclosed and sold in the event of nonpayment of the judgment.

On December 9, 2019, the trial court entered an order supplementing the judgment in order to account for the costs that the Association incurred while clearing and repairing the property.

On November 18, 2019, Ana Bosshart called the Association's attorney and provided a new mailing address in Seattle.  On January 29, 2020, a Sheriff's notice of sale was issued setting sale of the Bossharts' property for March 27, 2020.

On March 16, 2020, the Bossharts moved to vacate the default judgment and quash the order of sale.  On May 28, 2020, the trial court denied the motion.  The Bossharts appeal.

ANALYSIS

A. <u>Service of Process</u>

The Bossharts first argue that the Association's service by publication was improper.  "Whether service of process is proper is a question of law that we review de novo."  <u>Davis v. Blumenstein</u>, 7 Wn. App. 2d 103, 111, 432 P.3d 1251 (2019).

Personal jurisdiction requires valid service of process.  <u>Rodriguez v. James-Jackson</u>, 127 Wn. App. 139, 146, 111 P.3d 271 (2005).  When personal service is available, service by publication cannot be used.  <u>Dobbins v. Mendoza</u>, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).  When personal service is unavailable, however, the

-4-

Washington Legislature has authorized service by publication. RCW 4.28.100; CR 4(d)(3).

For service by publication to be proper, a plaintiff must strictly comply with RCW 4.28.100. Bruff v. Main, 87 Wn. App. 609, 612, 943 P.2d 295 (1997). First, the person seeking service by publication must file an affidavit stating that the affiant believes that the defendant is not a resident of the state, or cannot be found therein, and that he or she has deposited a copy of the summons and complaint in the post office, directed to the defendant's place of residence. RCW 4.28.100. Service by publication of the summons is allowed in cases, including where the defendant has departed from the state with intent to avoid service, where the subject of the action is real property and the defendant claims an interest therein, and when the action is to foreclose or enforce a lien on real property. RCW 4.28.100(2), (6), (7). The Bossharts do not argue that the affidavit was insufficient or that summons by publication is not authorized.

In addition to the affidavit, the person seeking service by publication must demonstrate that they conducted an honest and reasonable search. Martin v. Meier, 111 Wn.2d 471, 481, 760 P.2d 925 (1988). Although an honest and reasonable search must be made, not all conceivable search methods are required. Martin, 111 Wn.2d at 482; Brennan v. Hurt, 59 Wn. App. 315, 319, 796 P.2d 786 (1990).

The Bossharts contend that because the Association possessed Ana's e-mail address and telephone number and did not use either of them for service, it failed to conduct an honest and reasonable search. They additionally argue that

the Association failed to contact potential relatives listed on whitepages.com. We disagree.

The e-mail address that the Bossharts assert the Association should have contacted was located in a database of over 1,000 e-mail addresses that the Association uses to send bulk e-mails to its more than 860 property owners. The e-mail addresses in the Association's database do not include the owner's last name or address. The example e-mail that the Bossharts provided was a blanket solicitation for a food drive, sent to an e-mail address that did not contain their last name.

The telephone number the Bossharts claim the Association possessed is likewise unconvincing that the Association's search was improper. Whether the number was even in possession of the Association is in dispute. Ana claims that she noted on her calendar to contact the Association after finding a violation letter posted to the property. She states that this reminded her to call the Association's attorney and ask to speak to him. The attorney denied receiving these calls, and noted that Ana did not call until months later, after the trial court had entered the judgment.

The assertion that the Association needed to contact potential relatives on whitepages.com is also unfounded. The Bossharts did not allege that the individuals on the website that share the Bossharts' surname are actual relatives. The website also provided no contact information for the individuals. The Bossharts do not offer evidence that, had the Association pursued these leads, it would have led to locating the Bossharts.

-6-

The Bossharts rely on Pascua v. Heil, 126 Wn. App. 520, 529, 108 P.3d 1253 (2005), Charboneau Excavating, Inc. v. Turnipseed, 118 Wn. App. 358, 363, 75 P.3d 1011 (2003), and Rodriguez, 127 Wn. App. at 146, for the proposition that the Association's attempt at personal service was not honest and reasonable. Each case is distinct from the facts at hand.

In Pascua, the plaintiff was in a motor vehicle accident that produced an accident report. Pascua, 126 Wn. App. at 529. The court faulted the plaintiff for failing to use the information in the accident report to contact the driver whose car the defendant was a passenger in. Pascua, 126 Wn. App. at 529. The court applied an existing standard that the plaintiff needed to pursue leads in an accident report. See Martin, 111 Wn.2d at 482. There is no such report associated with the Bossharts.

In Charboneau, the court criticized the plaintiff's due diligence by noting that it did not call the defendant's daughter whose number it had. Charboneau, 118 Wn. App. at 358. But this was by no means the plaintiff's sole error: it did not contact the defendant's wife whose workplace it knew, did not check the assessor's records, and did not serve the correct address obtained by the process server, and only spent $36 on its attempts of personal service. Charboneau, 118 Wn. App. at 358. Here, whether the Association ever had the Bossharts' number is questionable. In addition, the Association searched for the Bossharts at their known addresses, checked the assessor's office, and hired an investigator to locate the Bossharts.

In Rodriguez, the plaintiff again failed to utilize information in an accident report—an insurance company's phone number. Rodriguez, 127 Wn. App. at 146. Additionally, in his affidavit in support of service by publication, the plaintiff failed to include any evidence that he used reasonable efforts to locate the defendant. Rodriguez, 127 Wn. App. at 146. The Association provides ample support of its attempts to locate and personally serve the Bossharts.

Despite the Bossharts' assertions, the record supports that the Association made an honest and reasonable search in an attempt to personally serve them. The Association sent a process server to the only address that the Bossharts provided it: their home in Maple Valley. The Bossharts listed this same address for purposes of notice for any communication from the Association. The server made multiple attempts to locate the Bossharts in person, and left notice on the home itself, the same home that Ana declares she "never abandoned . . . [and] visited . . . regularly to check on things."

The Association also sent notice to the P.O. box that the Bossharts provided, again to no avail. When service at the listed addresses was unsuccessful, the Association employed an investigator, who could only locate the addresses previously provided by the Bossharts. To supplement its attempts, the Association searched the King County Assessor's records, whitepages.com, and familiytreenow.com—all without success. Following these unsuccessful attempts to locate the Bossharts, it was reasonable for the Association to pursue service by publication. Thus, service by publication was proper service on the Bossharts.

B. CR 60(b)(1)

The Bossharts argue next that the trial court abused its discretion in finding insufficient cause to vacate the judgment under CR 60(b)(1). We disagree.

We review the trial court's decision not to vacate a judgment for abuse of discretion. A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007).

CR 60(b)(1) provides for relief from any judgment for "mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." Courts apply a four-prong test to determine if a default judgment should be vacated under CR 60(b)(1): (1) that there is substantial evidence supporting a prima facie defense; (2) that the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) that the defendant acted with due diligence after notice of the default judgment; and (4) that the plaintiff will not suffer a substantial hardship if the default judgment is vacated. White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 587 (1968).

The trial court found that the Bossharts did not submit evidence of a prima facie defense, did not act with due diligence, and that vacating the Association's judgment would cause it undue hardship. In doing so, the court did not abuse its discretion.

To establish a prima facie defense, the Bossharts may not merely state allegations and conclusions. Shepard Ambulance, Inc. v. Helsell, Fetterman, Martin, Todd & Hokanson, 95 Wn. App. 231, 239, 974 P.2d (1999). To assert their defense, the Bossharts submitted a declaration from Ana that the Association violated its notice requirements and caused many of the problems on the property. This assertion is unsupported and strongly contradicted by evidence in the record.

-9-

The Association submitted numerous documentary and photographic evidence of the Bossharts' violations. The record demonstrates that the Bossharts had been violating the Association's governing documents for years. There were vehicles sitting on the property, the most functional of which had ivy growing through the tire rims. There was garbage throughout the property. The gutters were falling off of the home. As opposed to the Bossharts' declaration that "there was only one tree branch on the roof," half of a maple tree had fallen through the roof into the Bossharts' home. The Bossharts did not offer a prima facie defense against these well-documented allegations.

Furthermore, the Bossharts do not demonstrate that their failure to timely appear was due to surprise. Relief may be available for surprise when there is a valid reason for misunderstanding. See, e.g., Spoar v. Spokane Turn-Verein, 64 Wash. 208, 212, 116 P.627 (1911) (holding that relief under surprise was available when a non-United States native believed that he need not appear until trial). Here, however, the Bossharts do not demonstrate a valid reason for misunderstanding. The Bossharts neglected their property that was subject to years of fines by the Association, failed to monitor communications from the Association to the addresses that the Bossharts provided, and claimed surprise upon discovering that a default judgment had been entered against them. These actions do not warrant relief.

Finally, vacating the Association's judgment would cause undue hardship. The Association spent ample time and resources correcting the property's deficiencies. The Association removed the vehicles, garbage, and tree debris. It patched holes in the windows and tarped the roof. Vacating the judgment would cause the Association

-10-

substantial hardship, including requiring the Association to absorb the costs of mitigating the Bossharts' years of neglect to the property. As a result of both the lack of prima facie defense and an imposition of undue hardship, the trial court did not abuse its discretion in denying the motion to vacate.

C. RCW 4.28.200

The Bossharts argue finally that the trial court abused its discretion in finding insufficient cause shown to vacate the judgment under RCW 4.28.200.[2] We disagree.

We likewise review the trial court's decision not to vacate a judgment under RCW 4.28.200 for an abuse of discretion. Morin, 160 Wn.2d at 753. To vacate a judgment under RCW 4.28.200, the Bossharts must not have been served personally with a complaint and further show "sufficient cause" for a vacatur. Caouette v. Martinez, 71 Wn. App. 69, 77, 856 P.2d 725 (1993).

For the same reasons relief was not available under CR 60(b)(1) it is not available under RCW 4.28.200. After numerous honest and reasonable attempts were made to locate the Bossharts, service by publication by the Association was proper. Further, the Bossharts have not proffered evidence to rebut the Association's documentation of numerous violations of its governing documents. As a result, the trial

---

[2] The right of a party to appear and defend or reopen following constructive service is as follows:

If the summons is not served personally on the defendant in the cases provided in RCW 4.28.110 and 4.28.180, he or she or his or her representatives, on application and sufficient cause shown, at any time before judgment, shall be allowed to defend the action and, except in an action for divorce, the defendant or his or her representative may in like manner be allowed to defend after judgment, and within one year after the rendition of such judgment, on such terms as may be just; and if the defense is successful, and the judgment, or any part thereof, has been collected or otherwise enforced, such restitution may thereupon be compelled as the court directs.

RCW 4.28.200.

court did not abuse its discretion in determining that there was not sufficient cause to vacate the judgment.

      D. <u>Costs and Attorney Fees on Appeal</u>

      The Association requests attorney fees on appeal under RAP 18.1.  Under RAP 18.1, a party may request reasonable attorney fees on appeal if an applicable law grants the party the right to recover.  The Association requests attorney fees based on the attorney fees provision[3] in its governing documents.  We generally recognize a provision in a contract allowing attorney fees to include fees on appeal as well as at trial.  <u>Edmundson v. Bank of America</u>, 194 Wn. App. 920, 932-33, 378 P.3d 272 (2016).  Because the Association's governing document's provision provides for costs and attorney fees, and because the Association prevails, we award costs and fees on appeal subject to compliance with RAP 18.1.

      Affirmed.

_____
Mann, C.J.

WE CONCUR:

_____
Andrus, A.C.J.

_____
Dwyer, J.

---

[3] The provision states:
The parties in interest in and to any part of the Real Property and the Club, for the benefit of the owners of the Real Property and each of them shall have the right and authority to enforce the provisions hereof and in addition to any other remedy for the damages or otherwise, shall have the right to injunctive relief.  Except for the foreclosure of the lien provided for in Paragraph 3, Article D, the Club, if successful, in any action to enforce any provision hereof shall recover a reasonable sum as attorney's fees together with the reasonable costs of searching and abstracting the public record which sums shall be paid by the unsuccessful party.