**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

In the Matter of the Estate of:

ALBERT SOOKE,

                    Deceased.

DIVISION ONE

No. 84261-7-I

UNPUBLISHED OPINION

DWYER, J. — Seven and a half hours before Albert Sooke died, his mother, Polly Sooke, transferred his home to herself under a British Canadian (BC) nondurable power of attorney. Albert's wife, Simone Sooke, thereafter filed a TEDRA[1] petition seeking to have the conveyance of the home invalidated. The trial court concluded that the power of attorney was in effect at the time of the transfer because Albert still had capacity under BC law. However, the court also determined that, because there was no admissible evidence that Albert had ratified the transfer, the conveyance of property was invalid.

The estate of Polly Sooke, represented by Polly's daughter Kelly Buckingham, appeals, asserting that the court erred by concluding that Albert had not ratified the transfer. Simone Sooke cross appeals, asserting that the court used the wrong definition of ratification and erred by evaluating Albert's capacity under BC law rather than Washington law. Simone additionally

---

[1] Trust and Estate Dispute Resolution Act, chapter 11.96A RCW.

requests an award of attorney fees on appeal.[2]  We conclude that BC law controls our analysis of ratification and capacity, that ratification is a retroactive act (rather than a prospective one), and that no evidence establishes that Albert ratified the transfer of his real property.  Accordingly, we affirm.

I

Albert Sooke was hospitalized on January 3, 2018 following a head injury.  His wife, Simone Sooke, reported that Albert had fallen on ice, but later evidence suggested that Simone had hit him on the head with a piece of wood.  On January 12, Albert was admitted to hospice.  Albert had, several decades prior, executed a power of attorney in British Columbia, Canada, naming his mother, Polly Sooke, as his attorney.  While Albert was in the hospital, at 3:58 p.m. on January 16, Polly used that power of attorney to transfer Albert's real property in Blaine, Washington, to herself and to transfer Albert's collection of motorcycles to his brother, Anthony Sooke.  Seven and a half hours later, at 11:30 p.m., Albert died of blood clotting in his lungs related to his brain injury.

Simone was appointed personal representative of Albert's estate.  In April 2019, she filed a TEDRA petition asking the court to value Albert's property, to determine the validity of the property transfers made under the power of attorney, and to award Simone her share of community and separate property.  She also filed a motion to construe the power of attorney, contending that it had terminated

---

[2] Simone also requests that we determine whether Buckingham has standing, conclude that the deed transferring Albert's property is void ab initio, and quiet title to the real property.  We decline to address these issues because they are not addressed in any orders before us on appeal.  "[T]his court generally will not address issues the trial court has not decided."  Pascua v. Heil, 126 Wn. App. 520, 533, 108 P.3d 1253 (2005); see also RAP 2.5(a).

upon Albert's incapacity, and citing medical records that referred to Albert as being unable to make his own medical decisions due to confusion prior to the property transfers. Polly and Anthony responded to the motion to construe, asserting that Albert had asked Polly to transfer the property and that she did so under the belief that she had the authority to do so. In support of their contention that Albert had capacity, they attached a police investigative report transcribing a conversation with Albert on January 12, 2018, in which Albert responded with nods, hand signals, and single word responses to the officer questioning about the circumstances of his injury.

Although the record suggests that a hearing took place, it does not indicate what occurred at the hearing. Moreover, there is no indication that an order was entered in 2019. There were then no filings for two years, until Simone's attorney filed a declaration in support of the motion to construe in July 2021, attaching a deposition transcript of one of Albert's doctors and expert opinion about the validity of the power of attorney from a BC barrister. Polly's daughter, Kelly Buckingham, filed a response to the motion, explaining that Polly had died two years previously, that Buckingham was the named personal representative in Polly's will, and that she had petitioned the Canadian court to probate her mother's estate.

On July 19, 2021, after a hearing at which both parties presented testimony regarding Albert's capacity, the court entered an order on the motion to construe. It found that Albert lacked capacity as of January 11, 2018, and that

the power of attorney was nondurable and terminated at that time. The court thus concluded that the subsequent conveyances of property were null and void.

Buckingham moved for reconsideration. On August 13, 2021, the trial court granted the motion, concluding that it had incorrectly applied the Washington definition of capacity and requesting supplemental briefing on the definition of capacity under BC law. On November 3, the court entered an order concluding that, based on the BC definition, Albert was not incapacitated prior to his death.

Simone thereafter moved for reconsideration and then for summary judgment, requesting that the court find that the transfers were invalid. She contended that Albert had failed to ratify the transfer of real property to his mother, as required by BC law. Buckingham responded, relying on declarations from Polly, Anthony, and herself, each averring that Albert asked Polly to transfer the property. Simone contended that these declarations were inadmissible pursuant to the dead man's statute, RCW 5.60.030.

On March 7, 2022, the trial court granted Simone's motion for summary judgment, finding that "'[r]atify' means to authorize or approve retroactively, expressly or by implication, per Black's Law Dictionary," and that Buckingham had not presented any admissible evidence that Albert ratified the conveyance of real property. The court thus concluded that the conveyance of real property was invalid under the BC power of attorney.

Buckingham moved for reconsideration, attaching several declarations from Albert's friends, in which they had contended that Albert had wanted his

property to be transferred to his mother and brother. On April 1, 2022, the trial court granted in part Buckingham's motion for reconsideration, concluding that it should have defined "ratify" pursuant to BC law and that "[t]here may be material facts in dispute as to whether the transfer was ratified, as defined by BC law."

Simone again moved for reconsideration, contending that under BC law ratification is "evidenced by clear, adoptive acts, manifesting the principal's intention to be bound by what the agent has done," and that it must "operate[ ] retrospectively." She further contended that Buckingham had failed to provide sufficient evidence that Albert ratified the conveyance of his real property. Buckingham responded, but addressed specifically only Simone's contentions concerning the definition of ratification, contending that there was no requirement that ratification must happen after the fact.

On June 3, 2022, the trial court entered an order on Simone's motion for reconsideration, concluding that "'[r]atify' under BC law, means to direct, approve, or authorize an act, either before or after the act," and that Buckingham had "presented no admissible evidence that the transfer of real property was ratified by Albert Sooke, either before or after the transfer."

Buckingham appeals and Simone cross appeals.

II

Both parties raise several issues regarding whether Albert ratified the conveyance of real property to his mother. The issues are addressed in turn.

We review a ruling on summary judgment de novo. Michael v. Mosquera-Lacy, 165 Wn.2d 595, 601, 200 P.3d 695 (2009). Summary judgment is

5

appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "When determining whether an issue of material fact exists, the court construes all facts and inferences in favor of the nonmoving party."  Michael, 165 Wn.2d at 601.

"The meaning and effect of a power of attorney is determined by the law of the jurisdiction indicated in the power of attorney and, in the absence of an indication of jurisdiction, by the law of the jurisdiction in which the power of attorney was executed."  RCW 11.125.070.  The power of attorney in this case was executed in BC, so the court properly looked to BC law to determine whether the power of attorney authorized Polly to transfer Albert's property.

Pursuant to BC law,

> [a] sale, transfer or charge to or in favour of himself or herself by an attorney named in a power of attorney, of land owned by the principal and purporting to be made under the power of attorney, is not valid unless the power of attorney expressly authorizes it or the principal ratifies it.

Property Law Act, R.S.B.C. 1996, c 377, § 27 (Can.) https://ltpm.ltsa.ca/27-attorney-cannot-sell-himself-or-herself [https://perma.cc/9JKR-Z4DZ].  The trial court ruled, and the parties do not dispute, that the power of attorney did not expressly authorize Polly to transfer Albert's real property to herself.  Thus, the issue is whether Albert ratified the transfer.

A

Buckingham first contends that the trial court abused its discretion by not permitting her to offer further argument and evidence as to whether the property conveyance was ratified after the court declared its definition of ratification.

6

Because the court never accepted Buckingham's request to limit its prior decision-making to the definition of ratification, we disagree.

At the first hearing on Simone's motion for reconsideration, the trial court granted a continuance because Buckingham had not yet filed a response. Counsel for Buckingham agreed that she would file a response, saying, "I'm happy to respond to that, but only on that narrow issue of the definition of ratification, not all of this other misleading stuff." The court responded: "He's filed his argument. You can file your response, and he can file a reply."

Simone's motion clearly raised the contention that there was insufficient evidence of ratification. Buckingham responded only to the issue of the meaning of ratification. It was not for Buckingham to determine the scope of Simone's motion. The trial court did not abuse its discretion by ruling on the issues raised in the motion.

B

Buckingham next contends that the trial court erred by shifting the burden of proof to establish that Albert ratified the transfer to her. We disagree.

"[T]he moving party on summary judgment bears the initial burden of showing the absence of an issue of material fact." Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 179, 313 P.3d 408 (2013). The moving party may meet this burden by pointing out to the trial court "that there is an absence of evidence to support the nonmoving party's case." Young v. Key Pharms., Inc., 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989). If the moving party meets this burden, then the burden shifts to the

nonmoving party to establish the existence of a material fact. Helmbreck v. McPhee, 15 Wn. App. 2d 41, 50, 476 P.3d 589 (2020).

Here, Simone contended in her motion for summary judgment, and again in her motion for reconsideration, that there was no admissible evidence indicating that Albert ratified the transfer of his real property. The trial court properly concluded that this shifted to Buckingham the burden to establish the existence of a material question of fact.

C

Simone contends on cross appeal that the trial court erred by concluding that the meaning of ratification under BC law is not restricted to retroactive approval. We agree.

BC decisional authority announces that ratification is a retroactive act:

> Ratification is a question of fact. It must be evidenced by clear, adoptive acts, manifesting the principal's intention to be bound by what the agent has done. If the principal takes any benefits or profits of the agent's acts, that is strong evidence of such an intention. Ratification operates retrospectively to endow the agent with actual authority to perform the act in question, as if the agent had been given such authority prior to performing the act. The burden of proving ratification is on the party alleging that ratification has occurred: Canadian Agency Law at pp. 35-47.

G.R.A.M. Contracting Ltd. v. BioSource Power Inc., 2014 BCSC 350, para. 29 (Can.) https://www.bccourts.ca/jdb-txt/SC/14/03/2014BCSC0350.htm [https://perma.cc/69EV-8CE9].

Buckingham contended in the trial court that the term "ratification" should be given its usual meaning, which, she asserted, is "to approve and sanction." The trial court agreed, concluding that requiring ratification to take place after the

transfer would "lead[ ] to an absurd result." However, Buckingham provided no legal authority in support of her contention, instead citing a report on legislative drafting conventions, which provided that definitions should be used to establish that a term is not being used in its usual meaning, and noting that "ratify" was not defined in the statute. This is not sufficient to override clear authority that ratification is retroactive. We thus conclude that, pursuant to BC law, ratification is a retroactive act.

D

Buckingham additionally contends that the trial court erred by finding that there was no admissible evidence that Albert ratified the transfer of real property.[3] We disagree.

Pursuant to RCW 5.60.030, often referred to as the dead man's statute,

> in an action . . . where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, or as deriving right or title by, through or from any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by any such deceased.

Here, Buckingham failed to establish that Albert ratified the transfer of his real property. Buckingham submitted eight declarations to support her claim. In April 2019, she submitted declarations from herself, Polly, and Anthony.

---

[3] Buckingham also briefly contends that the court's order was internally inconsistent because it permitted the transfer of personal property but not real property. However, the relevant law only applies to real property. Property Law Act, R.S.B.C. 1996, c 377, § 27 (transfer of land owned by the principal to the attorney is not valid unless expressly authorized by the power of attorney or ratified by the principal). It was therefore consistent for the court to require ratification only with respect to the real property.

9

Buckingham and Polly's declarations each stated that Albert had told them multiple times that he wanted Polly to transfer his property to her and Anthony. Anthony's declaration stated that Albert wanted Anthony and Polly to have his property. Then, in March 2022, Buckingham submitted declarations from Sami Hollibaugh, Ken Robinson, Maryjo Armstrong, and Tom Armstrong. In each of these declarations, the declarant stated that they spent a lot of time with Albert in his last days, and that they often reassured Albert that his property was being "taken care of," to which he would smile and give a thumbs up. All four declarations stated that Albert was happy or relieved that "his property was taken care of." Buckingham also submitted a second declaration from herself, stating that she visited Albert every day at the hospital "until he took his last breath," and that when she reassured Albert that Polly was transferring his property, he "mumbled the word 'good,'" and that "he was aware and seemed relieved that our mother had taken care of his house and personal property."

The trial court determined that the declarations of Polly, Anthony, and Buckingham were barred under the dead man's statute. However, neither the declarations from Albert's family nor from his friends allege that Albert took any "clear, adoptive acts" to ratify the transfer of his property in the seven hours after the transfer took place.[4] G.R.A.M. Contracting, 2014 BCSC 350, para. 29.

---

[4] Of the eight declarations, only Buckingham's second declaration makes any reference to the last hours of Albert's life. However, Buckingham does not challenge on appeal the court's finding that her declarations were inadmissible under the dead man's statute. Even if she had, the only claim about Albert that refers to the property transfer in the past tense is that he "was aware and seemed relieved," which fails to allege any clear, adoptive act.

There is no admissible evidence in the record indicating any retroactive approval of the transfer.

Buckingham contends that the totality of the circumstances—and in particular, the assault charges pending against Simone—indicate that Albert wanted Polly to transfer the property. The law does not indicate, however, that ratification may be implied. The trial court did not err in finding no evidence of ratification.

III

Simone contends, in her cross appeal, that the trial court erred by determining Albert Sooke's capacity based on BC law. She asserts that, because Albert was a Washington resident being assessed by Washington doctors, it is more appropriate for the court to apply the Washington standard of capacity. We disagree.

RCW 11.125.070 provides that "[t]he meaning and effect of a power of attorney is determined by the law of the jurisdiction" in which the power of attorney was executed, unless otherwise indicated in the power of attorney. Here, the power of attorney was executed in British Columbia. Thus, the "meaning and effect" is determined by BC law.

The BC Power of Attorney Act in effect at the time that the power of attorney was executed provided that:

> (1) The authority of an attorney given by a written power of attorney that
> > (a) provides that the authority is to continue notwithstanding any mental infirmity of the donor; and
> > (b) is signed by the donor and a witness to the signature of the donor, other than the attorney or the spouse of the

attorney, is not terminated by reason only of subsequent mental infirmity that would but for this Act terminate the authority.

R.S.B.C. 1979 c 334, § 7 (Can.),

https://free.bcpublications.ca/civix/document/id/hstats/hstats/1318030264

[https://perma.cc/48SX-QD33].

Here, the power of attorney, because it did not provide otherwise, would terminate by reason of Albert's "subsequent mental infirmity." If the mental infirmity standard differs from Washington's capacity standard, as the trial court concluded it does, then the "meaning and effect" of a nondurable power of attorney in BC is different from the meaning and effect of a nondurable power of attorney in Washington state. Thus, pursuant to RCW 11.125.070, the trial court was required to apply BC law's "mental infirmity" standard in order to determine whether Albert's power of attorney had terminated. The trial court did not err in so doing.

IV

Simone Sooke requests an award of attorney fees on appeal pursuant to RCW 11.96A.150(a), which provides that the court may award attorney fees to any party "to be paid in such amount and in such manner as the court determines to be equitable." "In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved." RCW 11.96A.150(a).

Simone contends that Buckingham caused excessive delays, made bad faith arguments, lacked standing, and locked Simone out of the real property in

question.  The record does not support Simone's contention that Buckingham was the cause of the delays in this case or that Buckingham's contentions were frivolous.  Furthermore, we decline to opine on issues that are not before us.  As the trial court did, we exercise our discretion and decline to award attorney fees.

Affirmed.

Dwyer, J.

WE CONCUR:

Brennan, J.          Hazelrigg, A.C.J.